Benjamin Thompson

*vs.*

Nathan Myrick and Wife.

Ch 83 of the acts of Congress for 1854 (10 *Statutes at Large*, 304,) authorizes the President to make an exchange with the Sioux half-breeds for their reservation on Lake Pepin, by issuing to them certificates or scrip for a certain amount of land, and provides that "said certificates or scrip may be located upon any of the lands within said reservation, * * or upon any other unoccupied lands subject to pre-emption or private sale, or upon any other unsurveyed lands not reserved by Government, upon which they have respectively made improvements." *Held,* that this provision as to "unoccupied lands" is framed for the *protection* of *occupants,* and that the occupant may waive the same so that a valid location of scrip may be made upon lands of which he is in occupation. *Held* further, that the clause, "upon which they have respectively made improvements," qualifies the words, "other unsurveyed lands," not the words, "other unoccupied lands."

*Gilbert vs. Thompson,* 14 *Minn.* 544, followed and applied.

Certain scrippees appointed one defendant N. M. their attorney in fact to locate scrip issued to them under the act of congress aforesaid. *Held,* that the relation thus created did not invalidate an agreement made by such attorney, either before or after the location, to "secure the title," enuring from the location to a third party upon payment of an agreed consideration. If A agrees to "secure the title" to land, not owned by him, to be lawfully vested in B, and subsequently A becomes invested with the title to the same, either in his own name or that of some other person holding for him, he may be compelled to perform his agreement specifically upon the same principles and for the same reasons as in case of an ordinary contract to convey lands of which he is the owner.

Thompson v. Myrick.

Consideration of the special facts in this case with reference to the defendants' claim that the plaintiff had *abandoned* the contract upon which this action is based; that he had failed to perform an indispensable condition precedent on his part; that the enforcement of the contract against defendants would be an inequitable exercise of the discretion of the court; and that the plaintiff has been guilty of such inexcusable laches as to disentitle him to the specific enforcement of the contract upon which this action is based.

This action is founded upon a written contract whereby defendant N. M. bound himself, "upon the location" of certain scrip, to "secure the title" to the land upon which it was located to be lawfully vested in the plaintiff. The scrip was located February 8th, 1859, and January 17th, 1861. At the time when the agreement was executed the scrippees were minors. The agreement upon its face recognizes their minority, and must be taken to have been entered into in view of the same, and the consequent obstacles to obtaining title from them before their majority. *Held*, that the agreement is not to be construed as an agreement to secure the vesting of the title in the plaintiff immediately upon the location of the scrip, but as an agreement to secure it within a reasonable time after such location. And as there is nothing to show that the defendant N. M. could have obtained title before the scrippees reached their majority in any legal way, it is to be presumed that he could not, and that, therefore, the period of reasonable time allowed him extended at least to the time of such majority; and that, therefore, the plaintiff's right to bring this action, which is in effect for specific performance, did not accrue until the expiration of such reasonable time and N. M.'s acquisition of title in 1866 and 1867, when the scrippees reached majority; and that, therefore, this action, which was brought in 1870, is not barred by the statute of limitations.

Appeal by the defendants from a judgment of the district court for Ramsey county, in an action for the specific performance of a contract to convey lands. The case is fully stated in the opinion.

C. K. DAVIS and GEO. L. OTIS, for Appellants.

E. C. PALMER for Respondent.

Thompson v. Myrick.

*By the Court.*—BERRY, J.—The conclusions of fact found by the court below, so far as they appear to be important upon this appeal, are as follows, viz.: That on or about the 6th day of September, 1858, and prior to that time, the defendant Nathan Myrick was attorney in fact, (duly constituted,) of Francis Longie and Joseph Longie his son, then a minor under the age of fourteen years, and of Francis Roi and Henry Roi his son, then a minor under the age of fourteen years, and was duly authorized to locate certain half-breed scrip issued to said Joseph and Henry in accordance with the provisions of the act of congress, approved July 17th, 1854, entitled " An Act to authorize the President of the United States to cause to be surveyed the tract of land in the Territory of Minnesota, belonging to the half-breeds or mixed bloods of the Dakota or Sioux nation of Indians, &c.," and was desirous of discovering valuable lands situate in the state of Minnesota, whereon to locate said scrip, or, in default thereof, of disposing of said half-breed scrip in such manner as to secure the interests of the said owners, in pursuance of the said authority and in discharge of the duty imposed upon him, the said Nathan Myrick, as attorney of the said parties ; that at and prior to September 6th, 1858, the plaintiff had knowledge of, and was, by himself and his agents and employees, in actual possession of certain lands, and had made valuable improvements thereon, and been at great expense thereabout to secure the title thereto in himself ; that on or about said 6th day of September, 1858, the plaintiff and defendant, Nathan Myrick, for the purpose of securing the interests of all said parties, entered into an agreement, which, after reciting in detail the facts in regard to Myrick's attorneyship aforesaid, proceeded as follows, viz.: " And whereas the said Nathan Myrick has placed the said scrip and the said powers of attorney in the hands of the said Benjamin Thompson, with a view to the location

thereof for the benefit of the said minors : Now this agreement witnesseth that the said Nathan Myrick, in consideration of the premises, and of the sum of one dollar to him in hand paid by the said Benjamin Thompson, party of the second part, the receipt whereof is hereby acknowledged, agree with the said party of the second part, that he will, upon the location of said scrip, secure the title to the land, whereon the same may be located, to be lawfully vested in the said Benjamin Thompson.

"And the said Benjamin Thompson, in consideration of the premises and the faithful fulfilment of the said agreement of the said Nathan Myrick, agree with the said party of the first part to pay him the sum of twenty-eight hundred dollars in one year after date, according to the condition of his promissory note to the said Nathan Myrick, bearing even date with this agreement, and to secure the payment of the said sum of twenty-eight hundred dollars upon the land so to be located, as soon as he shall acquire the title to the same as aforesaid, or to secure the same otherwise, upon the acquirement of such title, to the satisfaction of said Nathan Myrick ;" that this agreement and the half-breed scrip therein mentioned were delivered to plaintiff by said Myrick, and the plaintiff then and there delivered to Myrick a promissory note in the words and figures following, to-wit :

"$2,800.                    St. Paul, September 6th, 1858.

"Twelve months after date I promise to pay to Nathan Myrick twenty-eight hundred dollars, without defalcation, for value received.

"Benjamin Thompson."

That thereupon plaintiff proceeded and did locate said scrip on certain lands known to and occupied by him as aforesaid, a portion of said lands being thus located upon and entered in the name of said Henry Roi, in part on the 8th day of Feb-

Thompson v. Myrick.

ruary, 1859, and in part on the 17th day of January, 1861, and the rest of said lands being thus located upon and entered in the name of Joseph Lougie on said 8th day of February, 1859 ; that all of 'said lands were what are known, according to the United States surveys, as lots or fractional pieces, and therefore could not be entered with and by said half-breed scrip except upon condition that plaintiff should pay for the excess over what the said scrip would cover *in cash* at the rate of $1.25 per acre ; and in order to secure the title to said lots, and obtain a number of acres equal to the number of acres called for by said scrip, the plaintiff was obliged to and did enter said fractional lots and pay for such excess in cash, in consequence whereof said Henry Roi obtained the title to 13 40-100 acres of land over and above the amount called for by his said scrip, and the said Joseph Longie obtained the title to 32 82-100 acres of land more than was called for by his said scrip ; that the plaintiff paid all the fees and expenses of making said entries and in locating said scrip, all of which amounted to five hundred dollars exclusive of the sum paid for the excess of land aforesaid ; that by reason of the said acts of plaintiff, and the payments made by him as aforesaid, the said Henry Roi and the said Joseph Longie acquired the title in fee to all the lands entered in their names respectively, as aforesaid, by grant from the government of the United States ; that at the time of making the agreement aforesaid the said Myrick knew that said Thompson occupied the lands aforesaid and intended to locate said scrip thereon.

That on Dec. 26th, 1866, said Myrick procured said Henry Roi to execute his deed of the lands entered by the plaintiff, as aforesaid, in said Roi's name, whereby said Roi conveyed with warranty of title all said lands to Rebecca, the wife of said Myrick, her heirs and assigns, which deed was on Febru-

ary 14th, 1867, duly recorded ; that on January 3d, 1867, said Myrick procured the said Joseph Longie to execute a warranty deed to said Rebecca of the lands entered by plaintiff in the name of said Longie, as aforesaid, which deed was also duly recorded on January 17th, 1867 ; that said Myrick procured the deeds from Roi and Longie to be given to the said Rebecca, for the purpose of securing the title to said lands in the said Rebecca, as a gift to her from him, the said Myrick ; that at and before the execution respectively of the said deeds from Roi and Longie, the said Roi and Longie had each attained his majority and was of lawful age to execute the same respectively ; that said Rebecca now holds the title to all of said lands, (except certain undivided interests, conveyed away as hereinafter stated,) without having paid any consideration therefor ; that said Myrick and said Rebecca, on or about January 23d, 1867, conveyed to William Branch, his heirs and assigns, the equal undivided three-fourths part of all of said lands by deed duly recorded January 28th, 1867 ; that a portion of lot one, section 8, town 48, of range 16, (being part of the lands aforesaid,) was laid out as part of the town of Thompson on or about June 14th, 1870 ; that on or about June 11th, 1870, said Myrick and said Rebecca quitclaimed to the Western Land Association that part of said lot one lying north and east of Vermillion street in said town of Thompson, and the said Western Land Association, by its deed of July 15th, 1870, conveyed to said Myrick, his heirs and assigns, seventeen town lots, (being part of said lot one,) in said Thompson, and that said Myrick still holds the title to said seventeen lots in his own name ; that, as consideration for the lands conveyed to William Branch as aforesaid, said Branch paid to said Rebecca the sum of seven thousand dollars.

That said lands ever since the entry thereof have been con-

trolled and managed by said Myrick; that the sale to Branch was negotiated by said Myrick; that a portion of the consideration money therefor was paid by Branch after he had agreed to purchase said lands and before the execution of the deed to him; that there was paid to said Roi and Longie, as a consideration for their deeds to said Rebecca, the sum of one hundred dollars, and that the whole expense of obtaining said deeds, including said one hundred dollars, was the sum of two hundred and fifty dollars, which was paid out of the money so paid by said Branch.

That at and prior to July, 1861, and until about February, 1866, the plaintiff was in embarrassed circumstances, and there were judgments against him to a considerable amount, which could not be collected; that no tender of a conveyance of said land was ever made by Myrick to plaintiff, and no tender of the amount of said note was ever made by said plaintiff to said Myrick; that shortly after January 16th, 1860, Myrick stated to plaintiff that he was ready to convey said lands, entered upon the 8th day of February, 1859, upon payment of said note, but made no other demand of payment of said note; that subsequently, and prior to the fall of 1864, Myrick spoke to plaintiff upon different occasions in reference to said note and the payment of money thereon, but made no demand of the payment of said note; that some time in the fall of 1864 Myrick did demand payment of said note of plaintiff; that Myrick did not at that time, nor at any time, offer to convey the whole of said lands so entered in the names of Longie and Roi, as aforesaid, but did at the time of making said demand offer to convey the undivided four-fifths of the said lands, so entered on the 8th day of February, 1859, upon payment of said note and interest, claiming at the same time to retain the undivided one-fifth part of said lands, for the reason that there had been more delay, expense

and trouble in fixing up the matter than he expected ; that plaintiff insisted upon his right to a conveyance of the whole of said lands, and offered to raise the money and pay said note upon Myrick's giving security to perfect the title to said lands ; that Myrick refused to convey the whole of said lands, and shortly afterwards conveyed them to one Borup as security for a loan, upon the payment of which, in February, 1866, Borup conveyed the same to the said Rebecca, wife of said Myrick ; that the plaintiff had made arrangements to raise the money required to be paid for said lands under the agreement aforesaid, and up to the time of the conveyance to Borup was able and ready to pay the same, whenever Myrick should be able and ready to secure the title to said lands in said plaintiff, as in said agreement provided ; that said Myrick never returned or offered to return said promissory note prior to the trial of this action, but that on said trial defendants, (the said Myrick and his wife,) produced said note in open court, and then and there offered to cancel the same and surrender it to plaintiff.

As a conclusion of law, the court finds that the plaintiff is entitled to judgment, directing and decreeing that defendants, (the said Myrick and the said Rebecca his wife,) convey to plaintiff, his heirs and assigns, forever, the one undivided one-fourth part of the lands so entered by plaintiff in the name of Henry Roi and Joseph Longie, as aforesaid, and the whole of the seventeen lots aforesaid, and that, in case said defendants should fail to convey the said lands, the decree of the court shall stand in place of such conveyance, &c. Judgment having been entered accordingly, the defendants appeal.

Defendants' first point is, that " the agreement set out in the complaint is void under the act of congress and the treaty of 1830." The provision of the treaty of 1830, (7 *Statutes at Large*, 330,) referred to is that, under which the Lake Pepin

Thompson v. Myrick.

reservation was set apart for the half-breeds of the Sioux nation. The provisions of the act of congress, (10 *Statutes at Large*, 304,) referred to are those authorizing the president to make an exchange with the half-breeds for their reservation by issuing to them certificates or scrip for a certain amount of land, " which said certificates or scrip may be located upon any of the lands within said reservation, * * * * or upon any other unoccupied lands subject to pre-emption or private sale, or upon any other unsurveyed lands, not reserved by government, upon, which they have respectively made improvements."

It is claimed that, by the terms of the agreement between Myrick and Thompson, the scrip was to be located on land occupied by the latter, and that the agreement was therefore void as contravening the act of congress. The provision, by which the scrip was made locatable upon " unoccupied lands," was evidently framed for the *protection* of occupants. If an occupant saw fit, as Thompson did in this instance, to lay scrip upon land occupied by himself, this would be a waiver of the protection afforded to him by law, an abandonment of his occupancy, and, in effect, a restoration of the premises to the condition of " unoccupied land."

The further claim is made that the agreement is against the act of Congress, because it contemplates the location of scrip upon other land than that " upon which they, (the scrippees,) have respectively made improvements." The answer to this is, that this clause of the act qualifies the description, " other unsurveyed lands," not the description, " other unoccupied lands," &c. Such is the construction of the General Land Office. 1 *Lester's Land Laws*, 628, 2d ed., 370.

As to the point, that the real object of the contract was to accomplish a transfer of the scrip, we see nothing to distin-

guish this case in any important respect from *Gilbert vs. Thompson,* 14 *Minn.* 544.

The second position taken by defendants is, that the " agreement is void on common law grounds by reason of the relations of Myrick to the grantees of the scrip."

As the scrip was made non-assignable by the act of congress, ( 10 *Stat. at Large,* 304,) and therefore no valid transfer or conveyance of the same could be made, Myrick's relation to the scrippees was that of an attorney in fact, duly authorized to locate the scrip for them. So far as the location is concerned, there is no ground for supposing that it was not made prudently, and for the best interests of Myrick's (the attorney's) principals. So far as appears in this case, Myrick's duty in his fiduciary relation to the scrippees was at an end when the location was complete. As this relation was to end upon such location, we can conceive of no reason why Myrick was not at liberty, either before or after the location was made, to enter into an agreement to secure the title, (enuring from the location,) to the plaintiff upon payment of an agreed consideration. Such an agreement did not, so far as this case shows, tend to produce a conflict between Myrick's private interest and his duty to *locate* the scrip to the best advantage of his principals.

Defendants' third point is, that, " by the terms of the contract, the payment of this note by Thompson is a condition precedent to his right to specific performance." The note is non-negotiable and is in the hands of the payee, and there is, therefore, nothing to prevent full inquiry into its consideration It bears even date with the written contract between Myrick and Thompson, in which it is expressed to have been given in consideration of the matters set out in such contract and of " *the faithful fulfilment of the said agreement of the said Nathan Myrick.*" The note and contract should, then, be read

Thompson v. Myrick.

together as parts of one transaction. So reading them together, and by the light of the facts surrounding their execution, we think it is fairly to be inferred, (especially from the provisions as to security,) that the intention and expectation of the parties was, that the securing of the title of the lands in Thompson was to precede, or at any rate to be contemporaneous with the payment of the note. To this extent we think the contract operates to control the precise language of the note, making its enforcement depend upon the transfer of the title to Thompson, who would otherwise receive no consideration whatever for his promise to pay. Both parties, as the facts found show, appear to have acted upon this understanding,—Myrick appears never to have claimed payment of the note until he supposed himself to be in a condition to convey a valid title to Thompson, and the tenor of his answer in this case clearly shows that Myrick did not expect the note to be paid until he was able to make the conveyance, and that at most he only expected the payment to be made concurrently with the delivery of the necessary deeds. In addition to these considerations, the court below finds that Myrick has already received out of the property, the title to which he had agreed to secure to Thompson, an amount of money considerably exceeding the principal and interest of the note.

Defendants' fourth position is, that " this is not such a contract as a court of equity will specifically enforce, because it is not for a conveyance of the lands by Myrick, but is for services to be rendered by Myrick in securing a conveyance from Longie and Roi." Myrick's contract is, " that he will, upon the location of said scrip, secure the title to the land, whereon the same may be located, to be lawfully vested in said Benjamin Thompson." Plainly the purpose of the contract was to invest Thompson with the title to the lands. Myrick's agreement was not merely to perform services for Thompson

in securing the title, but *to secure it.* If, then, Myrick became invested with the title, either in his own name or the name of some person holding for him, we can conceive of no reason why he should not be compelled to perform specifically his agreement to secure the title to be vested in Thompson, upon the same principles, and for the same reasons, upon and for which he would be compelled to perform specifically an ordinary contract to convey lands, of the title to which he was possessed. If neither Myrick nor any one for him acquired the title, it might be that the plaintiff's sole remedy would have been an action for damages; but as the title has been acquired by or for him, it does not follow that plaintiff's sole remedy is still for damages only.

Defendants' fifth point is, that " the admitted and proven facts, and the findings of the court raise a conclusive presumption that the contract was abandoned." The question presented by this point is one of fact, upon which we need remark only that the court below has found against the defendants upon the evidence in the case *pro* and *con,* upon an examination of which we are unable to say that the conclusion arrived at is unsupported or erroneous.

Defendants' sixth position is, that " to enforce this contract under the circumstances disclosed by the testimony will be an inequitable exercise of the discretion of the court." The argument in support of this position is, in substance and effect, that the plaintiff has been wanting in due diligence, and is justly chargeable with laches in not asserting or prosecuting at an earlier date his claim to the lands in question; that he has lain by " with a view to see whether the contract would prove a losing or gaining bargain, and, according to the event, either to abandon it, or, considering time as nothing, to claim a specific performance;" that he has failed to claim or act under the contract for so long a time as to give the impression

Thompson v. Myrick.

that he had waived or abandoned the purchase under such circumstances as to justify the belief that his intention was to perform the contract. only in case it suited his interest; that the increase in the value of the lands in this case is entitled to great weight, as tending to show that the plaintiff's delay was not had in good faith, but with the design of taking advantage of the turn in the market, and of throwing the loss on defendant, should the property decline. The difficulty with this reasoning is, that it proceeds upon an assumed state of facts, which there was some evidence in the case to support, but the contrary of which is found by the court. Among the facts found it appears that no valid title to the lands in question was obtained from Roi and Longie, (the scrippees,) until December, 1866, and January, 1867. It further appears that Roi and Longie, at the time when the contract between Myrick and Thompson was entered into in September, 1858, were minors under the age of 14 years. There is nothing to show that they reached majority before the time when they executed the deeds to Rebecca E. Myrick in December, 1866, and January, 1867. And it follows that there is no proof nor presumption that Myrick could in any legal way have obtained title to the lands before the execution of these deeds from Roi and Longie. If so, then, for aught that appears, Myrick was not only never in a condition, but was unable to put himself in a condition, to secure the title to be vested in Thompson, pursuant to the contract, until December, 1866, and January, 1867. The present action to enforce a specific performance was commenced in 1870. Considering all the circumstances of the case, especially the fact that more than the amount of the plaintiff's note had been realized from the sale of a part of the scripped land to Branch, the lapse of time after defendant was in a position to render the action effectual in affording remedy by specific performance was not, then, so

long as justly to subject plaintiff to the charge of inexcusable laches in asserting and prosecuting his claim. That he did not abandon his claim under the contract, and that Myrick was not laboring under the impression that he had abandoned it, is, we think, a conclusion not difficult to be deduced from the facts found by the court and hereinbefore mentioned, among which we may specify the several conferences between the parties in relation to the conveyance of the lands, occurring from time to time after the location of the scrip ; Myrick's refusal to convey the whole of the land ; his claim of one undivided fifth only thereof; his retention of the note until the trial ; the plaintiff's claim of his right to a conveyance of the whole, and his offer to pay the note upon receiving security in the transfer of a valid title to him ; plaintiff's arrangements to raise the money to pay the note, and his ability and readiness to pay the same during a period of several years, as found by the court, whenever Myrick should be able and ready to secure him the title as provided in the contract.

Defendants' last position is, that " this action is barred by the statute of limitations." Myrick agrees " that he will, upon the location of the said scrip, secure the title to the land, whenever the same may be located, to be lawfully vested in the said Benjamin Thompson." The scrip was located February 8th, 1859, and January 17th, 1861. Defendants' claim that a cause of action accrued to plaintiff immediately upon the location of the scrip, and that the statute began to run from the date of the location, ι. e., from January 18th, 1861. We think the limitation, as applicable to this action to compel a specific performance, did not begin to run until Myrick obtained title by the deeds of December, 1866, and January, 1867, being the times when the scrippees reached their majority. His agreement to secure the vesting of the title, " upon the location of the scrip," is not, under any fair construc-

tion, an agreement to secure the same immediately upon the location ; the scrippees being minors, this could not be done. But the agreement must be taken to bind him to secure the vesting of the title in a reasonable time after the location of the scrip.    The agreement upon its face recognizes the minority of the scrippees, and must be taken to have been entered into in view of such minority, and of the consequent obstacles in the way of obtaining title from them before their majority.    As there is nothing to show that Myrick could have obtained title before their majority in any legal manner, it is to be presumed that he could not, and that, therefore, the period of reasonable time allowed him extended at least to the time of such majority.    If this be so, the plaintiff's right to bring the present action, (which was brought in November, 1870,) did not accrue until the expiration of such reasonable time, and until the acquisition of the title in 1866 and 1867, and is not barred by the statute of limitations.    This disposes of all of the positions taken by defendants, and the result is that the judgment appealed from is affirmed.