## George W. Robinson *et al.*

### *v.*

## Martha A. Robinson *et al.*

*Filed at Mt. Vernon January 25, 1886.*

1.  Conveyance—*acknowledgment—whether essential.* A conveyance of land after delivery is valid and binding on the grantors without any acknowledgment. The purpose of a certificate of acknowledgment is to prove the execution of the deed, and when its execution is otherwise proved, it is as binding as if properly acknowledged.

2.  Same—*delivery of deed.* In order to pass title to land a deed must be executed and delivered to the grantee, a valid delivery being indispensable. If a grantee obtains possession of the deed by fraud, without the knowledge or consent of the grantor, no title will pass.

3.  Same—*compelling new deed by grantor after his destruction of prior one.* Where the grantor obtains possession of his deed for land after its deliv-

ery to the grantee, and destroys the same without its having been recorded, a court of equity will compel the execution of another conveyance.

4. PARTIES—*in chancery—on bill to compel the making of a new deed, where the grantor had destroyed one already made.* A father sold and conveyed a tract of land to his son, who paid the purchase money, took possession, and made valuable improvements thereon, and continued to occupy the same until his death. Before his death the father obtained the deed, which had not been recorded, and destroyed it. He then conveyed the land to one G., for $1200, payable in one, two and three years, and took his three notes, secured by mortgage on the land, and G. conveyed to H. The widow and heir of the son filed their bill for a conveyance, making the father and G. and H. parties defendant. On hearing it was shown that the father had, before suit brought, transferred the first note to A as collateral security, and the second one to B: *Held*, that while A and B were proper parties if their interest had been known, they were not necessary parties, but that their interest could not be affected by the decree.

WRIT OF ERROR to the Circuit Court of White county; the Hon. THOMAS S. CASEY, Judge, presiding.

This was a bill in equity, brought by Martha A. Robinson and Nora O. Robinson, widow and daughter of John E. Robinson, deceased, in the circuit court of White county, against George W. Robinson and others, to set aside certain deeds, and to compel a conveyance of the north-east quarter of the south-west quarter of section 3, town 5 south, range 8 east, in White county.

It is alleged in the bill that on the 29th day of May, 1879, George W. Robinson was seized of the land, and on that day he and his wife conveyed the premises to John E. Robinson; that the grantee paid $600 in cash for the premises, and improved the same; that the deed was not of record, and that George W. Robinson had burned and destroyed it. It is also alleged that John E. Robinson died intestate, leaving complainant as his widow and only heir; that upon the death of John E., George W. Robinson took possession of the land and conveyed it to Winston Gentry, and Winston Gentry conveyed to William A. Hargrave. The defendants all put in answers to the bill. George W. Robinson admitted that he

was originally seized of the land, but he set up in his answer that his son, John E. Robinson, was insane; that the said John E., in his insane ravings, had often desired respondent to make him a deed to the land; that on May 29, 1879, in order to quiet John E. Robinson, and for no other reason, respondent sent for a notary public, and a deed was signed by him and his wife, and the acknowledgment written out, but the seal of the notary was not attached; that the deed was not delivered to the grantee, but respondent delivered it to his daughter, Sarah A. Robinson; that unknown to respondent or Sarah A. Robinson, the said John E. Robinson obtained possession of the deed; that subsequently John E. Robinson returned the deed to respondent, and respondent destroyed it; that after the death of the grantee, respondent took possession of the land.

On the hearing upon the pleadings and evidence, the court rendered a decree in favor of the complainants, as prayed for in the bill, which the defendants claim is erroneous for the following reasons: First, the deed was never really executed, no seal of the notary being attached; second, the evidence shows that there was no delivery; and third, in order to make a deed operative it must be the intention of the grantor that the delivery should take effect presently.

Messrs. CREBS & BERRY, for the plaintiffs in error:

To render a deed operative, in addition to signing, sealing and acknowledging, delivery and acceptance are essential. *Wiggins* v. *Lusk*, 12 Ill. 135; *Byars* v. *Spencer*, 101 id. 429; *Herbert* v. *Herbert*, Breese, 282; *Ferguson* v. *Miles*, 3 Gilm. 363; *Skinner* v. *Baker*, 79 Ill. 499.

Delivery is a question of intent. *Jordan* v. *Davis*, 108 Ill. 336.

A deed of gift, not delivered, destroyed, is of no effect, though there be proof of the declarations of the father, the

donor, during the existence of the deed recognizing the property in the donee. *Reid* v. *Butt*, 25 Ga. 28.

Upon the question of delivery we regard the case of *Gorman* v. *Gorman et al.* 98 Ill. 361, as presenting points very similar to those in the case now before the court.

To make the deed operative it must have been clearly the intention of the grantor that the delivery should take effect presently. *Jordan* v. *Davis, supra.*

Further, we insist that this decree should be reversed for the reason that it is shown on the part of defendants in error, in making their case, that there are parties interested in this suit not made defendants, and whose interests will be seriously affected should the decree be affirmed. George W. Robinson, in his testimony in behalf of defendants in error, testifies that he sold the land to Gentry, and took in payment three notes, secured by a mortgage on the land, and that one note was assigned by him to Mrs. A. E. Hinde, and another to Henderson Miller, who at the time rightfully held the notes, and neither of whom is a party to this suit. *Pratt* v. *Pratt*, 96 Ill. 184; *Hopkins* v. *Roseclare Lead Co.* 72 id. 373.

Mr. P. A. Pearce, and Mr. N. Holderby, for the defendants in error, reviewed the evidence quite fully as bearing on the question of delivery,—citing *Rawson* v. *Fox*, 65 Ill. 200.

No formal delivery was necessary to constitute a delivery. *Bryan* v. *Wash*, 2 Gilm. 557; *Gunnell* v. *Cockerill*, 79 Ill. 79; *Walker* v. *Walker*, 44 id. 311.

The want of a notarial seal to the certificate of acknowledgment to the deed in no way vitiates it. *Leaver* v. *Spink*, 65 Ill. 441.

At the time of the filing of the bill it was impossible to tell who held the notes secured by the mortgage, the presumption being that the mortgagee did.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It is not essential to the validity of a deed that the notary's seal should be attached. A deed may be valid and binding on the parties who execute it, without any acknowledgment before an officer. The purpose of the certificate of acknowledgment is to prove the execution ·of the deed, and where there is no certificate of acknowledgment, other proof may be resorted to to prove the execution of the instrument, and when thus proven, the deed is as operative and binding on the parties as it would be if properly acknowledged before an ·officer. There is ample evidence in the record to prove that the grantors executed the deed, and the fact that the notary failed to affix his official seal to the certificate of acknowledgment, did not affect the validity of the instrument.

But it is urged that the deed was never delivered, and upon this ground the title to the land did not pass to John E. Robinson, the person named therein as grantee. There is no conflict in the evidence as to the fact that the deed was in the actual possession of the grantee, and remained in his possession until a short time before his death. The defendant Robinson himself testifies that he procured the deed from John E. Robinson, and destroyed it. At what time or under what circumstances the deed went into the possession of the deceased is not clear from the evidence. But the fact that he had the deed, and was in the full possession of the land, improving and cultivating it as owner, is beyond question.

If the case was to be determined entirely upon the evidence of the defendant Robinson, and his daughter, Sally Hargrave, who, he claimed, had the custody of the deed, there might be some doubt in regard to the delivery of the instrument; but the decision of the case does not hinge upon the evidence of these two witnesses. There is much evidence in the record tending to prove that John E. Robinson purchased and paid for the land, and that the deed was properly in his possession,

as grantee, at the time his father obtained the possession of and destroyed it. Bracket testified to a conversation with George W. Robinson a short time before the deed was executed, in which Robinson told him that the land was paid for and belonged to John; that he had neglected to make a deed. Under the advice of the witness, Robinson then sent one of his sons to Enfield, after Wilson, the notary, to take the acknowledgment. Wilson testified that he took the acknowledgment of the deed, and Gowdy states that he saw the deed in the possession of John E. Robinson on the 10th day of April, 1882, and read it. Watson testified to a conversation with George W. Robinson, in which he said that John had paid $400 to redeem this land and another forty-acre tract from a mortgage, and the tract in question was to be deeded to John. Crabtree testified that Robinson told him in September, 1879, that his son, John, had $400 to pay on a piece of land.

There is other evidence that John E. Robinson, about the time the deed was executed, had $400 or $420 in his possession to pay on land. Indeed, there is much evidence in the record that John E. Robinson purchased the land from his father. In the fall of 1879, after the deed was executed, John E. Robinson was married, and moved on the land, built a house at a cost of $250, and made other improvements. He occupied the land for two or three years, until he died. These facts all indicate that he had purchased the land. It is true that George W. Robinson testified that he never delivered the deed, and did not intend to deliver it; but this evidence is overcome by the other evidence in the case, which we think is sufficient to establish the fact that the transaction was a purchase, and the deed delivered to John E. Robinson as a purchaser of the land. If the deed had never been delivered, the title to the land would not pass under the deed. Or if the grantee had obtained the possession of it by fraud, without the knowledge or consent of the grantor, the

title to the land would not pass. In order to pass the title to land, a deed must be executed and delivered to the grantee. A valid delivery is indispensable. But we regard the evidence in the record sufficient to establish a valid delivery.

It appears that after the deed was destroyed, George W. Robinson conveyed the land to Gentry for $1200, payable in one, two and three years, and took his two notes, and a mortgage to secure the notes, and Gentry conveyed to Hargrave. It also appeared from the evidence on the trial of the cause, that Robinson had transferred the note first due, to Mrs. Hinde, as collateral security, and the second note to one Miller, and retained the third note. Gentry and Hargrave were made parties to the bill, but when the bill was filed the complainant had no knowledge that Robinson had disposed of either of the notes, and consequently Mrs. Hinde and Miller were not made parties to the bill.

It is contended that the decree is erroneous because these two holders of the notes were not made parties. Had the complainant known that Mrs. Hinde and Miller held the notes in question, they would have been proper parties, but they were not necessary parties. If they have any interest in the premises, that interest will not be affected by the decree.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

This record was assigned to Justice DICKEY to prepare an opinion, but he failed to prepare the opinion, and the record was re-assigned at the November term, 1885.