MICHAEL C. DAY

*v.*

MARTIN B. DEVITT et al.

[Decided October 21st, 1911.]

1. Where mortgaged property of an intestate vested in her children, subject to the curtesy of her surviving husband, a third person who, at the husband's instance, bought the mortgage, filed a bill to foreclose, in which the husband and children were parties, and purchased the land at a sheriff's sale, intending to get his own purchase-money back and to hold the balance so as to protect the interests of the husband and children, was charged with a trust for their benefit.

2. Where a defendant in a bill for specific performance shows no hardship affecting him which would not be compensated by interest on the money due him, he is not in a position to raise the question of laches.

3. Defendant in specific performance bought up a mortgage on land of an intestate, who left a husband and children surviving, agreeing with the husband to foreclose the mortgage and buy in the property, and to sell for the benefit of the parties interested in the property; defendant only asking that he be repaid his expenses.—*Held*, that he could not defend the bill for specific performance on the ground that he was thereby required to get in the outstanding interests of the children, who were also defendants in the suit.

4. Whenever trust property is the subject-matter of litigation in a court of equity, all the parties in interest are proper, if not necessary, parties, and in such cases *cestuis que trustent*, unless they are so numerous as to make their inclusion burdensome, must be brought before the court.

5. In a suit for specific performance, brought against one who has bought and foreclosed an outstanding mortgage on land, buying in the land at the sheriff's sale, and who holds the land for the benefit of the surviving husband and children of an intestate, and whose only interest therein is a right to the purchase-money paid for the sheriff's deed, the surviving husband, who has a curtesy right in the lands, and the children, who have a fee-simple, subject to the curtesy right, are proper parties, under the rule that parties in a suit for specific performance must include all those who have interests in the land or rights in the purchase-money to be paid.

6. The court of chancery has the inherent power, irrespective of statute, to change the character of property in which infants are interested for the benefit of such infants, and one who holds property for infants may not dispose of the same without receiving sanction of the court; and the fact that the legislature has provided a summary method of sale of infants' land does not interfere with or deprive the court of such inherent power, whether such proceeding applies to infants who have title or only an equitable interest.

7. Defendant, in a suit for specific performance of his contract to sell and convey land, had bought in a mortgage on the land after the death of its owner, intestate, leaving a surviving husband and children, in whom the fee vested, subject to the husband's curtesy, and had foreclosed the mortgage and purchased at the sheriff's sale, and taken a sheriff's deed of the land to hold in trust for the husband and children, except as to his claim for money paid by him for the deed, which was only one-ninth of the value of the land, and all parties interested in the land were made co-defendants.—*Held*, that there was no lack of mutuality in the contract, though a sale by him would require a confirmation by the court, since at the time of the decree all the parties were before the court, and the contract was then mutually enforceable.

Heard on bill, amended bill, supplemental bill, answers and cross-bill, replications and proofs in open court.

*Mr. Merritt Lane,* for the complainant.

*Messrs. Carrick & Wortendyke,* for the defendant Devitt.

*Mr. John M. Enright,* for the infant defendants.

GARRISON, V. C.

The original bill in this suit was filed to compel the specific performance by Martin B. Devitt and wife of a contract made between the said Martin B. Devitt and wife and the complainant, Michael C. Day, which contract was dated the 24th day of December, 1906, and related to a piece of real estate in Jersey City.

Upon the final hearing upon the original bill and the answer and cross-bill of Devitt and wife thereto such facts were developed as caused the complainant to move for and obtain leave to amend his bill, and subsequently to obtain leave to file a supplemental bill herein.

An understanding of the situation will be best had by a recital of facts in narrative form:

The property in question belonged, at the time of her death, to Mary A. Fallon, who was the wife of James Fallon and the mother of the infant defendants herein. At the time of her death the title to the property became vested in the children, subject to the curtesy right of the husband. The only encumbrance upon the property at this time was a mortgage which originally had been $500, but upon which there was due at that time about three hundred and thirty odd dollars. This mortgage was held by the New Jersey Title Guarantee and Trust Company. The value of the property at that time was between four and five thousand dollars. There was no guardian acting in behalf of the children, and James Fallon, the father, was their natural guardian, under the circumstances. James Fallon conceived the idea that it was desirable to sell the property in question, and that the best way to effect this was to obtain the outstanding mortgage and foreclose it, thus cutting out the rights of the children, the owners, and to sell the thus cleared title. He had reason to believe that he could obtain at least $4,500 for the property if the title was cleared. Martin B. Devitt was a friend of Fallon's, and Fallon disclosed

his scheme to Devitt, and Devitt consented to buy the mortgage in his own name, foreclose the same and obtain the title and dispose of the same for the benefit of the owners; and upon the 15th day of March, 1906, the New Jersey Title Guarantee and Trust Company assigned the bond and mortgage to Martin B. Devitt in consideration of the sum of $336.30.

On the 24th of May, 1906, Devitt filed a bill in this court to foreclose the mortgage. Fallon and the children were of course parties defendant. No defence was interposed, and, on the 26th of November, 1906, the complainant Devitt purchased the property at the sheriff's sale for $500. He obtained his deed from the sheriff on the 4th day of December, 1906, and on the 24th day of December, 1906, he and his wife entered into the contract in issue in this suit by which he agreed to sell the property in question to Michael C. Day for $4,500, $200 of which was then paid him. The title by the agreement was to be clear.

It is perfectly plain from the testimony of Devitt himself, apart from any burden or duty which the law would cast upon him, that he acted in this matter solely to protect the interest of Fallon, the husband, and the infant children of Fallon, the owners of the property. He says he went into it "to do a little missionary work and help out;" and after he had given a full, and I believe trustful version, he was asked by the court a question, which, together with his answer, I think fully discloses his attitude. He was asked whether he understood that his relationship toward this property was to get his own money out of it which he had put in to purchase the mortgage, and then hold the balance in some way for the Fallon family, and he said that that was exactly his understanding. The situation in which he thus voluntarily places himself is practically that in which the law would have placed him even against his will. *Johns* v. *Norris (Chancellor Zabriskie, 1871), 22 N. J. Eq. (7 C. E. Gr.) 102; Johns v. Norris (Court of Errors and Appeals, 1875), 27 N. J. Eq. (12 C. E. Gr.) 485.*

After he had disclosed his relationship toward the property by this testimony the amended and supplemental bills were filed, the other defendants were brought in as parties, and the court appointed a solicitor for the infants so that they might have inde-

pendent representation before the court. By the amended and supplemental bills the complainant assumed this attitude: By contract between the complainant and Devitt and wife, the defendants Devitt and wife engaged to sell the property in question to the complainant for $4,500. Being advised by the testimony of Devitt in the suit that he occupied the position of trustee, the complainant had the right, if not the duty, of bringing the *cestui que trustent* before the court, they being proper, if not necessary, parties under the circumstances. And, further, it being developed by such testimony that Devitt would probably be held to be a trustee of the land for the said infants, and therefore unable to sell the same until he should have received the sanction of this court, there was an additional reason why the complainant had the right if not the duty to bring the infants before the court. And it further developing by such testimony that Devitt and the Fallon children undoubtedly (and perhaps Fallon, the father of the children) had interests in the $4,500 to be paid as the purchase price, the complainant was required, after notice of these facts, to bring all of these parties before the court so as to protect himself, secure a good title, and have all of the rights in this subject-matter adjudicated in the one action.

As I understand the attitude of the defendant Devitt, it is this: He does not deny the facts; he frankly and commendably sets forth facts which show that he was a trustee; that his sole interest in the matter was to secure to the husband who had the curtesy interest, and the children who had the fee, the benefits of this property, and that all that he did was to that end; but he says, since Day made a contract to purchase the property from him, and he is now willing to give Day a deed for whatever interest he individually has in the property, that is all that Day can require, and that the other parties defendant are improper parties defendant, and no decree should be made against Devitt in the suit in which such other defendants are parties.

There are some suggestions by the defendant Devitt of laches, but in my view of this case they are not such as to require serious consideration. The proofs show that the parties were negotiating back and forth for a long time after the date fixed for the final settlement, and the circumstances of the purchase of this mort-

gage for so small a sum, and the sale of the property to Devitt for what was admitted to be only one-ninth of its value, and the presence of infants and their rights were under discussion, and the complainant, Day, was always insisting upon wishing to take the property, and never by any act or statement showed an abandonment, seems to me to settle the question, and to show that there was no laches under any of the applications of that doctrine which I have found in this state. There is no pretence that any hardship arose to the defendant Devitt by reason of the delay—that is to say, any hardship that will not be compensated by interest on his money that is due him; there is nothing to show that the lapse of time caused any loss of any papers or documents, or that the complainant ever apparently abandoned his contract and attempted to revive it when the property had risen in value; or, in fact, any of the elements of laches as that doctrine obtains in our court. Furthermore, since I find that Devitt's only interest is to get out of the property the money which he put into it—a sum not over $500—I cannot see how he is in any position to raise the question of laches. The infants might possibly object if a larger price could for their benefit have been obtained during the interval of the negotiations, or what not; but I fail to see how this affected Devitt, or how he is in a position to raise this issue.

This reduces the available defences, as I understand the defendant Devitt's attitude, to two—*first,* that the other defendants than Devitt and his wife have no place in this suit, and that no decree should be made against Devitt in a suit if these other parties defendant are parties, and *second,* that since the contract lacked mutuality, if the court considers that the infants' interests must be protected in this suit, and that its confirmation of the sale was necessary, the contract cannot now be enforced against Devitt.

There is a suggested defence presently to be mentioned which I do not think arises under the facts and law applicable to this case. The defendants Devitt suggest that they have a defence based upon the idea that the complainant requires the defendants Devitt to go out and get in an outstanding interest, to wit, that of the infants; and that this court will not require a defendant in a specific performance case to go out and get in an outstanding interest. The reason why I do not think the facts justify this de-

fence is because I cannot see that the complainant here is asking the defendants Devitt to go out and get in any outstanding interest. What he is doing is to say to Martin B. Devitt, one of the defendants, "You have the legal title to this property, and the facts are that you hold it for certain *cestui que trustent,* who are infants. That being so, under the practice of the court of equity, it is proper for me, and necessary for my protection, that not only you, in your individual capacity, but as trustee, and your *cestui que trustent,* the infants, should be before the court so that the sale which you made shall be confirmed by the proper court, and the rights of the infants, so far as I am concerned, cut off, and so that all of the people interested in the purchase-money should be before the court."

Another position is also assumed by the defendants Devitt which I do not find to be available as a defence. These defendants say that since the infants were parties defendant in the foreclosure suit, and Devitt bought at a sheriff's sale in that suit, that decree cannot be attacked collaterally, and all the rights of the parties in that suit, including the rights of the infants, pass by virtue of the sale to Devitt. It is, of course, true that all the rights of all the parties in a foreclosure suit concerning the subject-matter of that suit pass to the purchaser at the sale; and it is unquestionably true that a decree of a court of competent jurisdiction, which has acquired jurisdiction, cannot be attacked collaterally. But I do not conceive that in the suit at bar the complainant takes any position which attacks the foreclosure suit directly or collaterally, or anything that was done therein, or any decree that was entered therein. What the complainant relies on are the undisputed facts that the foreclosure was undertaken by Devitt as trustee for certain people and for their benefit, and that when he purchased he purchased for their benefit, and he himself now so states; so that, so far as attacking the foreclosure, they affirm it and say, "Yes, that suit resulted in transmitting the title out of us as owners in fee-simple and into Martin B. Devitt as the legal holder thereof in trust for us, subject, of course, to his right to be repaid out of the trust property his proper expenditures in its behalf."

The only two questions, therefore, which will now receive consideration are those above stated, the former of which was that the defendants, other than Devitt and his wife, have no place in this suit, and no decree can properly be made against Devitt and wife in this suit because of the presence therein of these other parties defendant.

It should first be remarked that it is a firmly-settled doctrine of the court of equity in this state that wherever trust property is the subject-matter of litigation, all the parties in interest are proper, if not necessary, parties, and that the *cestui que trustent* —unless they are so numerous as to make their inclusion burdensome—must be brought before the court, if property in which they are interested is the subject-matter of the litigation. Many of our sister states have departed from this rule (which I also understand is the rule in England), and hold that where the trustee is before the court, he represents all of the interests of his *cestui que trustent,* and, excepting where there is an obvious conflict of interest between the trustee and the *cestui que trustent,* there is no necessity or propriety in the presence in the suit as parties of such *cestui que trustent.* For this reason cases in other states dealing with a similar subject-matter must be guardedly considered because of the difference concerning the propriety and necessity of the presence in the suit of the *cestui que trustent.*

The broad principle is stated by Story (*Story's Eq. Pl. (7th ed.), notes by Redfield,* § *207*), as follows:

"The general rule in cases of this sort is, that in suits respecting the trust property, brought either by or against the trustees, the *cestui que trust* (or beneficiaries), as well as the trustees are necessary parties. * * * The *cestui que trust* (or beneficiaries) have the equitable and ultimate interest to be affected by the decree, and therefore they are necessary parties."

(In the notes to this section will be found many cases illustrative of the principle.)

And the cases in our state which follow and enforce this principle are too well known and too numerous to make citation profitable.

With respect to the particular application of this doctrine or principle to specific performance cases, it will be found that in

other jurisdictions the matter has been absolutely settled in favor of the propriety or necessity of including in the suit all those who have interests in the land or rights in the purchase-money to be paid. And ▮▮▮▮ur own state, while there is no case directly in point, the cases in which the matter is adverted to seem to treat it as settled that the presence in the suit of such persons as have interests in the lands or rights in the purchase-money is in accordance with the established practice and the principle applicable thereto.

The principle will be found broadly dealt with in *36 Cyc. 769; Pom. Eq. Jur. (3d ed.)* § *114; Pom. Spec. Perf.* § *493; Fry Spec. Perf. Cont. (2d ed.)* §§ *160, 173, 183, 188.*

The English cases which hold that other parties than those to the contract may be proper if not necessary parties to a suit for specific performance, and that where other parties than the parties to the contract have interests in the land or assert rights with respect to the purchase-money, they should be included in the suit, are as follows: *West Midland Railway Co. v. Nixon, 1 H. & M. 176; 71 Full Eng. Reprint 77; Willats v. Busby, 5 Beav. 193; 49 Full Eng. Reprint 551; Daking v. Whimper, 26 Beav. 568; 53 Full Eng. Reprint 1017; Buckle v. Mitchell, 18 Ves. Jr. 100; 34 Full Eng. Reprint 255; Spence v. Hogg, 1 Coll. 225; 63 Full Eng. Reprint 394; Evans v. Jackson, 8 Sim. 217; 59 Full Eng. Reprint 87; Chadwick v. Maden, 9 Hare 188; 68 Full Eng. Reprint 469.*

The cases in our sister states to a like effect are as follows: *McDonald v. Yungbluth, 46 Fed. Rep. 836; Robinson v. Robinson, 116 Ill. 250; 5 N. E. Rep. 118; Shreck v. Pierce, 3 Iowa 350; Crosby v. Davis, 9 Iowa 98; Rocherster v. Anderson, 16 Ky. 143; Seager v. Burns, 4 Minn. 141; Improvement Fund v. Gleason, 15 Fla. 384; Bridgman v. McIntyre, 113 N. W. Rep. 776; 150 Mich. 78; White v. Walkins, 23 Mo. 423; Otto v. Young, 127 S. W. Rep. 9; 227 Mo. 193; Gentry v. Gentry, 87 Va. 478; 12 S. E. Rep. 966; Slaughter v. Nash, 1 Litt. (Ky.) 323.*

In *Kuhn v. Eppstein, 219 Ill. 154; 76 N. E. Rep. 145; 2 L. R. A. (N. S.) 884,* and in *East River and Astoria Land Co. v. Kindred, 112 N. Y. Supp. 540,* the converse of the proposition

is held. namely, that where the contract is between the equitable owner as vendor and a vendee, the latter may specifically enforce the same in a suit in which he makes the actual holder of the title a party.

The following cases in New Jersey will be found to advert to the subject-matter that we are considering, and indicate clearly to my mind that the principle applied elsewhere, and above stated, should be applied in this state: *Van Doren* v. *Robinson, 16 N. J. Eq. (1 C. E. Gr.) 256; Newark Savings Institution* v. *Jones' Executors, 35 N. J. Eq. (8 Stew.) 406; Kempton* v. *Bartine (Vice-Chancellor Grey, 1899), 59 N. J. Eq. (14 Dick.) 149; affirmed (Court of Errors and Appeals, 1899), 60 N. J. Eq. (15 Dick.) 411; Haberman* v. *Kaufer (Vice-Chancellor Grey, 1900), 60 N. J. Eq. (15 Dick.) 271 (at p. 278 et seq.).* And in *Van Keuren* v. *Siedler (Vice-Chancellor Leaming, 1907), 73 N. J. Eq. (3 Buch.) 241,* the court suggested that the holder of a prior recorded contract be made a party so that his rights might be considered and settled.

It would thus appear that by the application of well-settled doctrine to the case at bar, the latter was one in which it was proper, if not necessary, for the persons having either an interest in the land or a right to a part of the purchase-money to be brought into the suit after the defendant Devitt by his testimony had notified the complainant of the trust attitude in which he stood toward the subject-matter of the suit. I therefore find that there is nothing in the defence that in a specific performance case such as this the only proper parties are those to the contract; and I find that the complainant was justified in bringing before the court these other parties who had an interest in the subject-matter of the suit, and to adjudicate their rights therein.

The defendants Devitt place great reliance in a case in the court of appeals of New York, *Boyer* v. *East, 161 N. Y. 580.* In that case a mother of infants, whose father was dead, became thereupon their guardian in socage, and, under a statute of New York, became the custodian of their interests in real estate inherited from the father, in which real estate she also had interest as doweress. She purchased the property at a fore-

closure sale and resold it. Eight years afterwards the infants brought an action against the then holder of the title to set aside the foreclosure sale and recover the possession of the property, and have an accounting as to the rents and profits, upon the theory that they were *cestuis que trustent* of their mother, and that she could not convey a good title. The court held that she could convey a good title, and that the purchaser was not concerned with the application of the purchase-money; and, furthermore, that a delay of eight years after the youngest of the infants attained his majority before attacking this conveyance showed such laches that a court of equity would not administer relief in their behalf. Laying aside the obvious question which at once arises as to whether this latter determination did not dispose of the case, and whether, therefore, the rest of the opinion is not *obiter,* I do not see that this case is dispositive at all of the case at bar, nor, in fact, that it affects it. In the New York case there is nothing to show that the purchaser, who was certainly a *bona fide* one, did not purchase without notice of the infants' rights, and if this is so, undoubtedly his title would be good; and, furthermore, there is no pretense that if the purchaser had been compelled to proceed by specific performance against the mother in order to obtain his title, and had known that she was the guardian in socage, and thus represented infant *cestuis que trustent,* it would not have been proper, and perhaps necessary, to have made such infants defendants in that suit. And I am inclined to think (but I have not stopped to ascertain whether this is so) that New York is one of those jurisdictions where the general doctrine is that the presence in a suit of a trustee is sufficient to bind the rights of all the *cestuis que trustent,* unless their rights are obviously antagonistic.

I have, therefore, under the facts of the case at bar, and the law which I find applicable thereto, determined that after the disclosure by Devitt on the witness stand it was proper for the complainants to bring the infants before this court as parties, and that the attitude which the complainant then assumed was legally proper. That attitude was that he was prepared to pay the purchase-money; that he was entitled, in equity, to have before the court all persons whom the case then showed to have

any legitimate claim upon said purchase-money, so that he might be free from further claim with respect thereto. And that it is proper in this suit, as the decree herein provides, that the purchase-money shall be paid by the complainant and held for such of the defendants as show themselves entitled thereto, in such proportions or sums as they shall demonstrate to the court are theirs. Furthermore, since it appears that by reason of the facts the defendant Devitt was a trustee for infants, and as such could not dispose of real estate of infants without the sanction of this court, it was necessary to come to this court, to get such sanction, and in such proceeding it was necessary and proper to have the infants before the court when that question was to be determined.

It will be found by reference to the authorities, both in England and in this state, that the court of chancery has the inherent power, irrespective of statute, to change the character of property in which infants are interested for the benefit of said infants; and that one who holds property for infants may not dispose of the same without receiving the sanction of this court. *21 Cyc. 115 et seq.; Snowhill* v. *Snowhill (Chancellor Vroom, 1834), 3 N. J. Eq. (2 Gr. Ch.) 20* (reversed, but not on this point—opinion not reported—see *Oberly* v. *Lerch, 18 N. J. Eq. (3 C. E. Gr.) 350*) ; *Van Riper* v. *Wickersham, 77 N. J. Eq. (7 Buch.) 232*, where the property was that of a lunatic and not an infant.

In England the useful authorities are *Winichelsea* v. *Norcliffe, 1 Vern. Ch. 435; 23 Full Eng. Reprint 569; Inwood* v. *Twyne, Amb. 417; Lord Ashburton* v. *Lady Ashburton, 6 Ves. 6; Ex parte Phillips, 19 Ves. 118.* And many of the English authorities will be found reviewed and the principle elaborated in *Hale* v. *Hale, 20 L. R. A. 247, 251.* And the doctrine has been approved in the following cases in our sister states: *Marsh* v. *Reed, 64 Ill. App. 588; Ruggles* v. *Tyson, 104 Wis. 508; 48 L. R. A. 812; Gorman* v. *Mullins, 172 Ill. 353; Johns* v. *Johns, 172 Ill. 480; 50 N. E. Rep. 337; Baldrige* v. *Coffey, 184 Ill. 76; Richards* v. *East Tennessee, &c., Railroad Co., 106 Ga. 635; 45 L. R. A. 721; Mayall* v. *Mayall, 63 Minn. 514; 65 N. W. Rep. 942.*

It appearing from the authorities that a court of equity has inherent power to change the character of property in the interest of the infant, the fact that the legislature has provided a summary method of sale of infants' lands does not interfere with nor deprive the court of such inherent power. *United States Mtg. Co.* v. *Sperry, 138 U. S. 313; 34 L. Ed. 969, 976;* and this without consideration as to whether the summary proceeding does not apply only where the infants have title, and not, as in the case *sub judice,* where the infants have solely an equitable interest.

Testimony was taken as to the propriety of the sale of this property at this sum, and I find that this is the full value of the property, and that the sale is an advantageous one for the interests of the infants, and that the trustee should be permitted to make it.

In reaching this determination I likewise conclude that under the circumstances it was proper for the complainant to bring the infants before the court after notice that they had interests in the land, so that the sale which their trustee had negotiated might be confirmed in protection of the complainant's title.

This latter determination also disposes, in my view, of the second defence interposed by the defendants as above set forth, namely, lack of mutuality. Their contention is that if this court shall find that under the circumstances Devitt occupied the position of the trustee for these infants and that this sale required confirmation by this court, then there was a lack of mutuality in the contract, and therefore the court would not enforce the contract.

John Norton Pomeroy, Jr., the son of the author of *Pomeroy's Equitable Jurisprudence,* and the author of the two added volumes which are annexed to the third edition thereof and are termed *"Pomeroy's Equitable Remedies,"* in the seven hundred and sixty-ninth section, says that the doctrine of mutuality "is open to so many exceptions that it is of little value as a rule;" and in sections 772 and 808 he states the principle and gives the cases which hold that if the vendor can make a good title at the time of the decree, this satisfies the rule of mutuality.

To a similar effect, see *36 Cyc. 621, 623; Fry Spec. Perf.* §§ *448, 452, 972, 974, 981, 988; Hawkes* v. *Eastern, &c., Railroad*

*Co., 1 DeG. M. & G. 737; 42 Full Eng. Reprint 739* (at *p. 746*);
*Kuhn* v. *Eppstein, 219 Ill. 154; 76 N. W. Rep. 145; 12 L. R. A.
(N. S.) 884; Thompson* v. *Myrick, 20 Minn. 205; McDonald* v.
*Yungbluth, 46 Fed. Rep. 836.* And in our own state, *Woodruff*
v. *Woodruff (Chancellor McGill, 1888), 44 N. J. Eq. (17 Stew.)
355; Cramer* v. *Mooney (Vice-Chancellor Grey, 1899), 59 N. J.
Eq. (14 Dick.) 164; Barger* v. *Gery (Vice-Chancellor Steven-
son, 1902), 64 N. J. Eq. (19 Dick.) 263* (at *p. 268*); *Resnick* v.
*Campbell (Vice-Chancellor Stevenson, 1904), 68 N. J. Eq. (2
Robb.) 348; Agens* v. *Koch (Vice-Chancellor Emery, 1908), 70
Atl. Rep. 348; Van Riper* v. *Wickersham (Court of Errors and
Appeals, 1910), 77 N. J. Eq. (7 Buch.) 232.*

I proceed upon the assumption that if at the time of the decree
(which is what the cases hold) the contract could not have been
mutually enforced one against the other, then the court will not
enforce it. In the case at bar, I do not think that this contract
lacked mutuality, in view of the cases dealing with that subject.
If it be determined that Devitt was the trustee of infants' land,
and that he must receive the confirmation of this court of any sale
before he could properly make such sale, there was nothing to pre-
vent Devitt after having negotiated this bargain from coming to
this court and obtaining its confirmation, and then enforcing his
rights as against Day if Day had refused to carry out the contract.
And, as I hold in this case, a similar right rested in Day, namely,
to come to this court and bring the trustee and the *cestuis
que trustent* here, and the bargain made between the trustee and
Day, and ask the court to confirm the sale and then enforce it.
In this view I cannot see how it can possibly be held that there
was lack of mutuality in the contract. To hold otherwise than
this would be to hold that all sales which are negotiated and re-
quire the confirmation of the court (of which there are very many
in this state) are unenforceable because at the time the contract
was made undoubtedly the seller—whether he is an official of the
court, or a trustee, or what not—is not in a position to carry out
the contract, and will not be until the court confirms the sale.
The opposite of this has always been held, and where such a con-
tract has been made and subsequently confirmed, the court has
always enforced such contract specifically.

Unquestionably, at the time of the conclusion of this case and the confirmation by this court of the sale, this contract was mutually enforceable the one against the other; and this is all that I understand is required. Since I do not know of any case dissenting from this view, I shall not burden this opinion with citations of the authorities which are in accord with it.

The decree will be so drawn as to conclude the rights of Devitt and the *cestuis que trustent* in the property in question, to require the payment of the purchase-money by the complainant, and the bringing of it into court to be disposed of by the court with due regard to the rights of all the parties concerned in it.