# WILLIAM P. DOLE

## vs.

# JOSEPH P. WILSON.

This action relates to certain Chippewa land scrip, issued under the seventh subdivision of the second article of the treaty of Sept. 30th, 1854, between the United States and the Chippewa Indians of Lake Superior and the Mississippi.

The language of the subdivision is, that "Each head of a family, or single person over twenty-one years of age at the present time, of the mixed bloods, belonging to the Chippewas of Lake Superior, shall be entitled to eighty acres of land, to be selected by them under the direction of the president, and which shall be secured to them by patent in the usual form."

This seventh subdivision is not limited or qualified by the provisions of the third article of said treaty.

The privilege of the half-breed to select eighty acres of land, was a *personal* right, and therefore the scrip, issued as evidence of such right, was non-assignable.

The transfer of the scrip would not be illegal, but only ineffectual and void, as a transfer of title to the same.

A promise to pay, founded solely upon the attempted sale of the scrip, would be *nudum pactum*

The delivery of the lawful possession of said scrip, together with the transfer and delivery of an agreement, pertaining to and accompanying the same, and made by the half-breed to whom the scrip was issued, by which he bound himself, for a valuable consideration, to convey, by good and sufficient deed, all such lands as might be selected and entered by him, either in person or by attorney, to such party or parties as should locate said scrip, his or their heirs or assigns, on demand after the location thereof, *held* to furnish a valid and sufficient consideration for a promise to pay money.

The validity of this consideration would not be affected by the mere fact, that there was also an attempted sale of the scrip. For a promise contained therein, it is competent to show a consideration, not inconsistent with, though additional to that mentioned in a written instrument.

Dole v. Wilson.

Appeal by the defendant from an order of the district court for Ramsey county, overruling a demurrer to the complaint. The case is fully stated in the opinion.

MASTERSON & SIMONS for Appellant.

JOHN B. & W. H. SANBORN for Respondent.

*By the Court.*—BERRY, J.—The Chippewa land scrip (so called) involved in this action, must be taken, upon the allegations of the complaint, to have been issued under the seventh subdivision of the second article of the treaty of September 30th, 1854, between the United States and the Chippewa Indians of Lake Superior and the Mississippi. The language of the subdivision referred to is as follows, viz. : " Each head of a family, or single person over twenty-one years of age at the present time, of the mixed bloods belonging to the Chippewas of Lake Superior, shall be entitled to eighty acres of land, to be selected by them under the direction of the president, and which shall be secured to them by patent in the usual form." The third article of the treaty contains provisions to the effect, that the president " may assign to each head of a family, or single person over twenty-one years of age, eighty acres of land, for his or their separate use, and he may at his discretion, as fast as the occupants become capable of transacting their own affairs, issue patents therefor to such occupants, with such restrictions of the power of alienation as he may see fit to impose."

The counsel for the defendant refers to, and relies upon these provisions of the third article, as qualifying and limiting the above quoted seventh subdivision. In our opinion, they have no such effect; but they relate to the lands reserved by the previous subdivisions of the second article of the treaty.

Such also appears to be the construction of the General Land Office and Secretary of the Interior. 2 *Lester's Land Laws*, 371-4.

The complaint in this action, (which appears in this court for the second time, *Dole vs. Wilson*, 16 *Minn.* 525,) alleges that on or about April 8th, 1867, the plaintiff and defendant entered into a written agreement, the material parts of which are as follows, viz.: "This agreement, made and concluded this 8th day of April, 1867, by and between Wm. P. Dole, of the first part, and J. P. Wilson, of the second part, witnesseth, that the said party of the first part does hereby sell, and at the execution of these presents does deliver, to the party of the second part, twenty-eight pieces of Chippewa land scrip, of eighty acres each, being 2,240 acres, at the rate of three dollars per acre, in consideration of which sale and delivery, the said party of the second part does hereby agree to pay for said scrip the full sum of $6,720, on or before the 8th day of October, 1868. * * * In witness whereof, we have hereunto set our hands and seals, April 8th, 1867.

Signed,          J. P. WILSON. [SEAL.]<br>W. P. DOLE."

The complaint further alleges, that pursuant to said agreement, the plaintiff did, on April 8th, 1867, deliver to the defendant twenty-eight pieces of said Chippewa land scrip, of eighty acres each, and that the same were " certificates of identity, issued out of, by, and under the seal of the Interior Department of the United States Government," in pursuance of the treaty aforesaid, by the United States, " which entitled " the parties named in said certificates to enter, and make " title in fee simple in themselves, their heirs and assigns, to " two thousand two hundred and forty acres of the public " lands of the United States, in the aggregate, and entitled " each of the half-breeds named therein to enter the number

Dole v. Wilson.

" of acres of said public domain, designated in his said certi-
" ficate, to-wit, eighty acres.   And that each of said twenty-
" eight half-breeds, named in said twenty-eight certificates of
" identity, had, for a valuable consideration to them paid by
" the plaintiff, agreed to convey by good and sufficient deeds,
" with covenants of warranty and seizin, all such lands as
" might be selected and entered by them, either in person or
" by attorney, to such party or parties as should locate said
" certificates or scrip, his heirs or assigns, on demand after
" the location thereof.   And that these agreements pertain to
" each of said pieces of scrip respectively, and were conveyed
" and delivered, in connection therewith, and as an incident
" thereto, to this defendant, or other parties taking the same.
" That each of said twenty-eight pieces of scrip, or certifi-
" cates of identity, has been located upon a portion of the
" public lands of the United States, subject to location by
" said half-breeds, and that the lands so located have been
" patented by the United States to said half-breeds of the said
" Chippewa tribe, their heirs and assigns; and that each of
" said half-breeds has conveyed by good and sufficient war-
" ranty deeds, with full covenants of warranty and seizin, all
" the lands so located or called for by said scrip, to said defend-
" ant, Joseph P. Wilson, or to parties designated and named
" by him, (and who have paid said defendant a large sum
" therefor, to-wit: the sum of five dollars per acre,) to his
" and their assigns forever.   And that said scrip, and said
" agreements incident and pertaining thereto, and the lands to
" which the title has been made thereby, as aforesaid, in said
" defendant or his assigns, as aforesaid, are of great value,
" to-wit: of the value of ten thousand dollars.   And in con-
" sideration of all which, the defendant, on the day of the
" date of said agreement, did promise to pay the plaintiff six

"thousand seven hundred and twenty dollars, according to "the terms and conditions of said agreement."

The complaint stating that the scrip was issued in pursuance of the treaty, it is to be presumed that the entries, which, according to the complaint, the parties named in the scrip were thereby authorized to make, were entries of land "*to be selected by them*," in the language of the seventh subdivision. That is to say, the privilege of each half-breed to *select* eighty acres of land was a personal right, and therefore the scrip, issued as the evidence of the right, was non-assignable. And it was accordingly held by the General Land Office, that transfers of the scrip were void, and that a certificate could only be located in the name of the half-breed in whose favor it was issued. 2 *Lester's Land Laws*, 371-4. But as held, with reference to the Sioux half-breed scrip, in *Gilbert vs. Thompson*, 14 *Minn.* 544, the transfer of the certificates would not be illegal, but only ineffectual and void, as a transfer of the title to the same. If, then, the defendant's promise to pay was founded solely upon the attempted sale of the certificates, as a consideration, the promise would be *nudum pactum*. In this case, however, it appears that the scrip was in the possession of the plaintiff, and, in the absence of an affirmative showing to the contrary, it must be presumed that his possession was lawful, that is to say, a possession assented to by the half-breeds to whom the scrip was issued.

In addition to the attempted sale of the certificates in this instance, which was ineffectual as a transfer of title, the plaintiff delivered the same to the defendant. Whether this delivery alone would have furnished a sufficient consideration for defendant's promise to pay, we need not consider. The complaint shows that each of the twenty-eight pieces of scrip was accompanied by one of the agreements to convey before mentioned, and that such agreements were conveyed and delivered,

Dole v. Wilson.

in connection with the scrip, and as incident thereto, to defendant. The complaint further alleges that these agreements entered into, and were a part of the consideration of the defendant's promise to pay the sum which this action is brought to recover. In our opinion, the delivery of the scrip to the defendant, together with the agreements to convey, furnish a valid and sufficient consideration to support defendant's promise. Inasmuch as the scrip was non-assignable, and the title to the same could not be transferred, we see no reason why it was not entirely competent for the half-breeds to revoke the delivery, and to assert their right to the scrip, and the possession thereof, regardless of the delivery. But notwithstanding they had this right, it was also competent for them, at their option, to suffer the defendant to retain the actual possession of the scrip, as they appear to have done. Practically, and in fact, this possession, although by sufferance merely, was of great value to a person who held scrip of this kind, with agreements to convey, as in this case. The possession of the scrip not only better enabled him to transfer his rights by virtue of the agreements to convey, but it also enabled him better to preserve the scrip itself from loss or destruction, better to influence the selection of the land, and better to forward and promote his rights and interests under the agreements, without any necessary wrong or injury to the persons to whom the scrip was issued.

As to the agreements to convey, they are certainly *per se* unobjectionable. The treaty not only contains no prohibition of such conveyance, but it expressly provides, (in sub-division seven, *supra*,) that the lands are to be secured to the half-breeds " by patent in the usual form," *i. e.* in the form in which patents are made to any ordinary purchaser of public lands, without restraint upon the power of alienation. See *Gilbert*

*vs. Thompson, supra ; Doe vs. Wilson,* 23 *Howard,* 457 ; *Crews vs. Burcham,* 1 *Black,* 352.

If we are right, there can be no reason why the delivery of the scrip, with the transfer and delivery of the agreements, would not furnish a valid and valuable consideration for defendant's promise. The validity of this consideration would not be affected by the mere fact that there was also an attempted sale of the scrip. The sale being simply ineffectual, not illegal, it would not taint any other consideration with which it might chance to be associated.

As to the admissibility of evidence of the agreements to convey, it will be noticed, that in the written instrument between plaintiff and defendant, upon which this action is founded, defendant's promise is stated to have been made in consideration of the sale and delivery of the scrip, no other consideration being mentioned. It is nevertheless competent to show the additional consideration of the transfer and delivery of the agreements to convey, the same not being inconsistent with the considerations mentioned in the written instrument. *Jordan vs. White, ante, p.* 91, *and cases cited ; Miller vs. Goodwin,* 8 *Gray,* 542 ; *Preble vs. Baldwin,* 6 *Cushing,* 552 ; *Gale vs. Coburn,* 18 *Pick.* 397 ; 1 *Greenl. Ev. sec.* 304.

It is possible that the defendant may be able to plead and prove facts, showing that the transactions between plaintiff and defendant were not only evasive, but subversive of the policy of the government, under the treaty before mentioned. Whether such showing would not be overcome by proof of the issue of the patents by the United States, and of the execution of the deeds by the half-breeds, is a question which suggests itself, but upon which we express no opinion. Order overruling demurrer affirmed.