Harmon v. Clayton.

HARMON v. CLAYTON ET AL.

1. **Public Lands**: ENTRY: NEGLECT OF OFFICER.  A party, by his authorized agent, presented a land warrant at the office of the register and received a register's certificate of location, and in the presence of the agent the proper entry was made upon the plat book.  The warrant failed to reach the General Land Office, and the land so entered was subsequently included in a railway land grant.  The Department of the Interior, reversing the decision of the General Land Office, directed that the lost warrant might be replaced with a duplicate by one claiming title under the original entry:  *Held*, that the party making the entry acquired an equitable interest in the land, which, upon compliance with the condition imposed by the department, ripened into the legal title thereto.

2. ———: NOTICE: CONFLICTING ENTRIES.  In cases arising under conflicting entries of public lands the doctrine of notice does not apply.

*Appeal from Dallas Circuit Court.*

SATURDAY, APRIL 26.

THIS action was originally brought at law to recover possession of the north half of the north-west quarter of section 23, township 81, range 28.    Upon the answer and cross-petition of the defendants the cause was transferred to the equity docket.    The court found that the plaintiff is the owner of the land in controversy, and quieted his title thereto.    The defendants appeal.    The material facts are stated in the opinion.

*I. N. Kidder*, for appellants.

*D. W. Woodin* and *Nourse & Kauffman*, for appellee.

DAY, J.—The plaintiff claims the land in controversy in

Harmon v. Clayton.

virtue of a patent from the United States.   The defendants

1. PUBLIC
lands: entry:
neglect of
officer.
claim it in virtue of an act of Congress approved May 15, 1856, making a grant of lands to the State of Iowa to aid in the construction of certain railroads, and an amendment thereof approved June 2, 1864.   The land is without the fifteen-mile limit of the act of 1856, but is within the twenty-mile limit of the act of 1864.   The facts relating to the claims of the respective parties are as follows:

On the 5th day of July, 1855, Thomas Jones located the entire north-west quarter of section 23, township 81 north, of range 28 west, with military bounty land warrant No. 7687.

On the 8th day of February, 1856, this entire entry was cancelled because the south half of said quarter section had previously, to-wit, June 15, 1855, been sold to Alfred Frost.

On the 8th day of August, 1857, Thomas Jones applied to the Register of the Land Office at Des Moines to enter or locate the north half of said quarter section.   The facts being reported to the Commissioner of the General Land Office he directed that Jones be permitted, within sixty days from the receipt of notice to that effect, to locate the north half of said quarter with a land warrant duly assigned, or to enter it with money.

On the 31st day of August, 1857, J. B. Stewart, as the agent of Thomas Jones, and pursuant to instructions from him, presented at the office of the Register of the United States Land Office, at Des Moines, military bounty land warrant No. 34261, for the purpose of locating the land in controversy for Jones, and received a register's certificate of location in the usual form.   In the presence of Stewart, at this time, there was entered upon the plat book, over the tract in controversy, the following:   "L. L. W. 34261."   These letters and figures indicate that the tract was located with military bounty land warrant No. 34261.   It is the duty of the officer to make an entry upon the plat book when the location is made.   Afterward the location is placed upon the land

warrant abstract, and is posted upon the tract book. The register and receiver make monthly returns, with the land warrants located, to the Commissioner of the General Land Office. From some neglect or omission in the office of the register no entry of the location was made except that upon the plat book, and the warrant was never received at the office of the Commissioner of the General Land Office, so that the books of that office showed nothing as to the location of the land in controversy.

On the 31st day of August, 1857, J. B. Stewart advised Thomas Jones of the location in question, and transmitted by letter the register's certificate.

On the 1st day of April, 1858, Thomas Jones conveyed the land in controversy to Martha Simmons.

On the 18th day of August, 1869, Martha Simmons conveyed said land to the plaintiff. The plaintiff and his grantors have paid the taxes on the land from the year 1856 to 1876, both inclusive. J. B. Stewart had the transaction relative to the location of the warrant in question with one Moore, the register's clerk, in the absence of the register, Moore being in charge of the office, and it being, as the testimony shows, his duty to perform the duties usually performed by the register.

On the 23d day of October, 1867, the register transmitted to the Commissioner of the General Land Office lists of the lands selected for the Cedar Rapids & Missouri River Railroad, under the act of June 2, 1864, containing the land in controversy, and accompanied the lists with a memorandum showing the entry made on the plat book over the land in question

On the 2d day of January, 1873, the Commissioner of the General Land Office advised the register and receiver at Des Moines that the tract in controversy was subject to selection by the Cedar Rapids & Missouri River Railroad Company.

On the 10th day of November, 1873, the land was certified

as enuring to the Cedar Rapids & Missouri River Railroad under the act of June 4, 1864.

On the 2d day of August, 1874, the Cedar Rapids & Missouri River Railroad Company deeded the land in question to the Iowa Railroad Land Company.

On the 14th day of April, 1876, the register sent a communication to the Commissioner of the General Land Office giving a general history of the facts connected with the entry of Jones, the conveyance by Jones to Martha Simmons, and by Martha Simmons to S. S. Harmon, and said:

"Mr. S. S. Harmon, of Redfield, Dallas county, Iowa, the grantee under the Jones *et al.* conveyances, now asks that he may be allowed to furnish either a duplicate land warrant No. 34261, eighty acres, act of 1855, or another eighty-acre warrant, unexceptional, or one hundred dollars in cash, to perfect or conclude the location in the name of Thomas Jones, and thereby perfect title in the name of S. S. Harmon, and that the Cedar Rapids & Missouri River Railroad Company have credit for said tract, that they be enabled to obtain an equal number of acres for this tract elsewhere."

To this proposition the Commissioner of the General Land Office, on the 4th of May, 1876, replied as follows:

"In view of the fact that the tract has been certified to the company, and that certification is the only manner of conferring title in similar cases under the act of June 2, 1864, I am of the opinion that the question has passed beyond the jurisdiction of this office, and must, therefore, decline to accede to Mr. Harmon's request."

An appeal was taken from this decision to the Department of the Interior, and on the 11th of August, 1876, the decision of the Commissioner of the General Land Office was reversed, and it was determined that if land warrant No. 34261 could not be produced, its place might be supplied with a duplicate, another warrant or cash, and the location in that manner completed.

On the 16th of September, 1876, the receiver acknowledged

the receipt of one hundred dollars for the land in controversy, substitution for land warrant No. 34261.

On the 3d day of November, 1876, the land was duly patented to Thomas Jones.

Under the foregoing facts we have no hesitancy in holding that the plaintiff is the owner of the land in controversy.

On the 31st day of August, 1857, many years before the passage of the act under which the defendant claims, Thomas Jones presented at the office of the Register of the United States Land Office at Des Moines a warrant to make location of this land. In his presence the usual entry was made upon the plat book, which is the first step in making a location. He did all that was in his power to do. No neglect or omission is attributable to him. The failing to make the remaining entries, and the failure of the warrant to reach the General Land Office at Washington, resulted from omissions of the officials, or from accidents for which Jones is in no way responsible. Jones, by what he did on the 31st day of August, 1857, acquired an equitable interest in the land, and an equitable right to have the location completed. By the decision of the Department of the Interior this equitable title has been perfected, and the legal title has been vested in him.

Appellants claim, however, that Stewart had no authority to make the entry for Jones without a power of attorney. So long as Jones does not repudiate the acts of his agent, and the government of the United States recognizes them, it does not lie in the mouths of the defendants to insist upon Stewart's want of authority.

It is further insisted that Moore, the clerk in the register's office, had no authority to allow the location and make the entry in question. It is in evidence that he had such authority, and there is nothing to show the want of such authority. Surely the register in a land office may avail himself of the customary and usual helps necessary to a proper performance of his duties. The evidence shows that

nine-tenths of the work in the office was done by clerks, and the record furnishes no data for holding that this mode of transacting the business of the office is improper.

It is claimed that the Iowa Railroad Land Company is an innocent purchaser of the land, and must, as such, be protected. In cases arising under conflicting entries of 2. ——: notice: government lands the doctrine of notice is not conflicting entries. recognized. *Heirs of Klein v. Argenbright*, 26 Iowa, 494, and cases cited. If, at the time of the passage of the act of Congress under which defendant claims, June 2, 1864, the Cedar Rapids & Missouri River Railroad Company had entered the land and paid a consideration for it, neither it nor its grantee would, under the doctrine of the above case, be protected as an innocent purchaser. Surely a mere beneficiary has not equities superior to those of a party who pays a consideration.

AFFIRMED.