BUFFALO LAND & EXPLORATION COMPANY v. HUGH P. STRONG and OTHERS.[1]

December 11, 1903.

Nos. 13,588—(92).

**Complaint.**

The complaint in this action, brought to determine adverse claims, *held* to state a cause of action.

**Findings.**

*Held,* that certain alleged findings of fact made by the Commissioner of the General Land Office, and approved and adopted by the Secretary of the Interior, were really not findings upon controverted facts, but amounted to nothing more than conclusions of law, and therefore subject to revision by the courts.

**Power of Attorney.**

With certain exceptions, a principal named in a power of attorney may revoke such an instrument at his mere pleasure, although the agency may be expressly declared to be irrevocable; but when the authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is a part of a security, the power is irrevocable, whether so expressed or not.

**Sioux Scrip.**

*Held,* in the case at bar, that two powers of attorney—one to locate certain Sioux half-breed scrip and the other to convey the land thereby located —taken separately or together, did not amount to an assignment or transfer of the scrip itself.

[1] Reported in 97 N. W. 575.

Action in the district court for Lake county to determine the adverse claims of defendants to vacant and unoccupied land. The case was tried before Cant, J., who found in favor of plaintiff and ordered judgment in accordance therewith. From this order and from a judgment entered pursuant thereto, defendants Hugh P. Strong, Mary A. Strong, Josiah M. Vale, Meda Vale, Margaret Conway and John Brennan, appealed. Order and judgment affirmed.

*John Brennan* and *John Jenswold, Jr.,* for appellants.

*William C. White,* for respondent.

COLLINS, J.[2]

This was an action to determine adverse claims, the complaint alleging plaintiff's title in detail, which appeared to be derived through the location of Sioux half-breed scrip upon unsurveyed lands by an attorney in fact—the scrip being issued under and pursuant to the provisions of the congressional act approved July 17, 1854,[3] which act was under consideration in Midway Co. v. Eaton, 79 Minn. 442, 82 N. W. 861, 1118, affirmed in 183 U. S. 602, 607, 22 Sup. Ct. 261; that, before the commencement of this action, through fraud and mistake, a patent to the land had been wrongfully and unlawfully issued to defendant Hugh P. Strong; and that under and through this patent certain other defendants claimed title. It was also alleged that the title or interest in the land asserted and claimed by other defendants was derived through one Pettijohn, the person to whom the scrip had been issued, but subject to plaintiff's rights. The usual demand for relief was made in this complaint.

By answer defendants denied generally, and then specifically denied that the patent under which part of them claimed was issued through fraud or mistake, or wrongfully or unlawfully. A part of the allegations of the complaint relating to the location of the scrip stood admitted, but other allegations concerning the location were put in issue. It was alleged that a contest in the land department was initiated by Hugh P. Strong to cancel, vacate, and set aside the location of the scrip as illegal and void, because it was not made for or by Pettijohn, or his agent or attorney, and because no improvements had been made on the

[2] START, C. J., absent, sick, took no part.

[3] 10 St. 304, c. 83.

land prior to the pretended location thereof; that a notice of the contest was served, and a hearing held before the local land officers, which resulted in a disagreement between the register and receiver; that, on appeal to the Commissioner of the General Land Office, the case was decided in favor of Strong; that an appeal was taken to the Secretary of the Interior, and that his decision was also in favor of Strong; that thereafter the latter made final proof under the United States homestead act, and received the patent referred to in the complaint. A copy of the power of attorney, authorizing one McGuire, with power of substitution, to select and locate lands to which Pettijohn might be entitled by reason of the scrip in question, a copy of the instrument whereby McGuire substituted one Hoover as agent to locate, a copy of the power of attorney executed by Pettijohn, whereby he authorized McGuire to sell and convey the lands when located, with power of substitution, and another instrument, whereby McGuire substituted one Hale as agent to do and perform all of the acts covered by the original power to convey, were made a part of the answer. There were also attached to the answer copies of the findings made by the register of the local land office, of a memorandum made by the receiver at the same time, of the findings of the Commissioner of the General Land Office, and of the findings made by the Secretary of the Interior on appeal, which, as before stated, were in favor of Strong, and against Pettijohn and his grantees.

On the issues made by the pleadings in this action, the cause came on for hearing before the court below, sitting without a jury; and, upon its findings of fact, judgment was ordered for this plaintiff, and declaring that defendants had and have no right, title, or interest in or to the land in dispute. Counsel for defendants then moved for a new trial. The motion was denied, and judgment entered in accordance with the conclusions of law. This appeal is from both the order and the judgment.

Many questions involved in this case were disposed of in Midway Co. v. Eaton, supra, and need no further consideration. There are three questions, however, presented by counsel for defendants, which must be discussed on this appeal, as follows:

1. Did the complaint state a cause of action?

2. What effect should be given to the findings, alleged to be of fact,

made by the Commissioner of the General Land Office on the trial of the contest, and subsequently approved and adopted by the Secretary of the Interior?

3. Construing the two powers of attorney separately, or as one instrument, do they constitute a sale or assignment of the scrip, which is absolutely forbidden by the congressional act of July 17, 1854 (10 St. 304, c. 83)?

1. The complaint stated a cause of action. We have already said that it was brought to determine adverse claims. It was unnecessary to allege in detail plaintiff's chain of title, or to refer to the issuance of the patent to defendant Strong; and the fact that this was done, and also that the complaint alleged that the patent was issued through mistake and fraud, did not alter the nature of the action, nor add anything to the force of the pleading. These allegations could be rejected as surplusage, and a cause of action still be found in the complaint.

2. It is somewhat difficult to ascertain from the decisions of the Commissioner and the Secretary just what these officials intended to find as facts. The Commissioner found that no improvements of any character whatever were made by Pettijohn, or for his use or benefit, either directly or indirectly, prior to the location; that he had never had any connection with the land, or with the making of any improvements; and also that he never knew McGuire, the party mentioned in the power of attorney; also that he did not know the persons substituted in the powers by McGuire as attorneys; that the power of attorney authorizing the latter to locate the scrip was executed under a mistake of fact (what mistake, nowhere appears); that the location was not made in the interest of Pettijohn; and, further, that, for a consideration, Pettijohn parted with his interest in the scrip on the day he executed the powers. The Commissioner undoubtedly held that the powers were genuine, and not forgeries, as claimed by Pettijohn, but he seems to have placed his decision in favor of the contestant, Strong, upon two grounds:  (1) Because he supposed that the attorney named in the power to locate could not make improvements for Pettijohn; and (2) because the two powers—one to locate and the other to sell the land—taken together, amounted to a sale and assignment of the scrip, a transfer prohibited by the statute, and which, if made, rendered the location invalid and

void. The findings of the Secretary upon appeal, and his conclusions of law, are all summed up in the following paragraph appearing in his opinion:

> "The evidence in this case shows that prior to the location of said scrip on the land in question there had never been any improvements made thereon by the scripee, nor by any one authorized by him, nor with his knowledge and consent; that said location was not made in the scripee's interest, as required by the statutes and the regulations of this department, but that it was made in their own interest, by parties to whom he had in fact assigned said scrip by a double power of attorney—one to locate and one to sell—and should be cancelled."

This paragraph was based upon a misapprehension of the law governing the location of half-breed scrip. It was found that there had never been any improvements made on the land by Pettijohn, nor by any one authorized by him, nor with his knowledge or consent, simply because he had not personally made the improvements which had been placed on the land prior to the location, and had not personally authorized that they be made. This is evident from the Secretary's reference to the United States statutes and to the regulations of the Interior Department—regulations which were wholly unwarranted, because it has frequently been held by the Supreme Court of the United States that necessary improvements may be made on unsurveyed land by a duly authorized attorney in fact in all cases when improvements are a prerequisite to location. That this was done by the substituted attorney, Hoover, is beyond all controversy. The finding that the scrip itself had been sold and assigned by means of the two powers of attorney was also based upon a misapprehension and misconstruction of their legal effect. It was this misconception, and not by reason of any determination of the actual facts, that led the Secretary to direct a cancellation. It was undisputed upon the hearing before the departmental officers, and also upon the trial of this case in the court below, that valuable and sufficient improvements had been made by Hoover, who had been substituted as attorney in fact by McGuire prior to the location. Authority to make the improvements and do all other necessary acts

was found in the power, and this authority had not been revoked at the time the improvements were made and the scrip laid. As there was no controversy over the facts, the conclusion of the officials was not really one of a controverted fact, but of law, and subject to revision by the courts. The alleged findings on this point are not governed by the rule, which nearly all courts have adopted, to the effect that findings of departmental officers on controverted facts are conclusive in the absence of fraud, imposition, or mistake, except as they may be reversed on appeal in that department. O'Connor v. Gertgens, 85 Minn. 481, 89 N. W. 866.

3. There was no substantial difference between the power to locate the scrip considered in Midway Co. v. Eaton, supra, and the one now before us. The attorney in fact, or his substitute, was irrevocably vested, in terms, with all such power and authority as Pettijohn himself could exercise if personally present; and the acts of such attorney, or his duly authorized substitute, were fully ratified and confirmed. Nothing more need be said about this power. The only difference between the power to sell under consideration in this case last mentioned, and the one now before us, arises out of the clause in the latter whereby and in consideration of the sum of $160 paid by the attorney in fact named in the power there was irrevocably vested in such attorney the power to grant, bargain, sell, demise, convey, and confirm any tract of land which Pettijohn might acquire by virtue of the scrip location; and the latter, for this same consideration, also released to his attorney all claim to any of the proceeds of a sale, lease, or contract relative to any part of said land. It is well settled, with certain exceptions, that a principal named in a power of attorney may revoke such an instrument at his mere pleasure, although the agency may be expressly declared to be irrevocable in terms. This rule of law applies to the power to locate, which expressly provided that it was irrevocable. But when the authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, the power is irrevocable, whether so expressed or not.

The power to sell was therefore irrevocable, because it was executed for a valuable consideration. But we do not regard this fact as distinguishing this case from one where the power to sell may be revoked

at will, whether there is or is not a provision declaring it irrevocable. But the fact that the power to sell was irrevocable did not operate to, nor did it, transfer the scrip, or have any more effect upon the transaction than if the power had been simple, and, in terms, exactly that considered in the Midway case. The inhibition found in the statute applies solely to a transfer or sale of the scrip, and in this case the scrip was to be located by the attorney in fact in the name of Pettijohn, and the patent would issue to Pettijohn, and to no one else. When the location was made under the power, the land became Pettijohn's, and could have been conveyed by him at any time before an exercise of the authority found in the power to sell.

The case is governed in part by Gilbert v. Thompson, 14 Minn. 414 (544), and is not distinguishable from Thompson v. Myrick, 20 Minn. 184 (205). In the first of these cases it was held that the right to acquire lands by means of this scrip was a personal right in the one to whom the scrip was issued, and was not property, in the sense of the right being assignable; that no restraint was imposed by the statute upon the right of property in land acquired by a location of the scrip after such location. In the scrip itself, said the court, the half-breed had nothing which he could transfer to another, but his title to the land, when perfected under it, was as complete as though acquired in any other way. The title vested absolutely. In the Thompson case it appears that, with a view to the location of the scrip for the benefit of the beneficiaries, one Myrick placed the same, with powers of attorney, in the hands of Thompson, and at the same time entered into a written agreement with Thompson, in which he agreed that upon the location of the scrip he would secure the title to the land located to be lawfully vested in Thompson. The consideration was $2,800, evidenced by a note payable in one year from its date, and to be secured upon the land as Thompson should acquire title. Thompson located the scrip, and demanded a conveyance of the title. Myrick refused, and conveyed the land to his wife, who was also a defendant in the suit. Specific performance was decreed by the trial court, and its decree was affirmed by the Supreme Court of the state and of the United States.

If such a contract did not operate as a transfer of the scrip, we fail to see how the power of attorney now before us could have that effect.

If anything, the intent to secure title to the land was much more manifest through the Myrick-Thompson contract than it was by an irrevocable power of attorney executed for a valuable consideration. It could make no possible difference whether $160 was actually paid before the location in consideration of the execution of a power, or $2,800 was to be paid afterwards, for the title.

The fact that the two powers may have been given at the same time, and with an intent that through one the real estate located by virtue of the other should be conveyed to a third party, does not amount to an assignment of the scrip itself—the only act forbidden. The powers are entirely separate and independent. The exercise of one does not depend upon the exercise of the other. Hoover is made the agent to locate; Hale, to sell. The power to locate was revocable; the power to sell was irrevocable. If the transactions were intended as a conveyance of the land, and represented that intention, they could not be shown to be a transfer of the scrip. Midway Co. v. Eaton, supra.

Order and judgment affirmed.