## EDWARD E. HEERMAN v. EUGENE S. ROLFE.

(145 N. W. 601.)

In an action to determine adverse claims to real property, both parties deraign title through a common source, to wit, locations made pursuant to certain Dacotah or Sioux Half-breed scrip issued under act of Congress, July 17, 1854. 10 Stat. at L. p. 304, chap. 83. Such scrip was located and filed in the land office by one Thos. B. Ware, pursuant to a power of attorney theretofore executed and delivered to him by the scripee, one Demerce. Such power of attorney also authorized Ware to sell the land when such scrip was located, and for a designated consideration exonerated him from accounting to the scripee for the purchase price. Pursuant thereto Ware located such scrip on the land in question on October 18, 1883, making the necessary preliminary proof required by such act. Thereafter, and on said date, he conveyed the land by deed to defendant's remote grantor, Wilbur, under whom defendant claims title. In the month of February, 1884, plaintiff, for a designated consideration of $50, procured from Demerce and wife personally a deed of such land, under which he asserts title in this action. Plaintiff claims a superior title over defendant chiefly upon the alleged ground that the portion of the power of attorney from Demerce to Ware, authorizing Ware to sell the land, amounted

in effect to an assignment of the scrip in contravention of the act of Congress
aforesaid, and was therefore ineffective and void. The land constitutes a part
of the town site of Minnewaukan, and a portion was platted by defendant, who
has been in possession most of the time since acquiring title, and has paid all
the taxes which have been paid on such property.

Scrip — location of — equitable title — patents.

    *Held*, 1. That upon the location of such scrip on October 18, 1883, Demerce
acquired the full equitable title to such property, which became absolute upon
the subsequent issuance of the patents by the United States government.

Power of attorney — assignment — scrip — act of Congress — alienate —
power — contract.

    2. That the power of attorney authorizing Ware to sell the land thus ac-
quired through such scrip did not amount to an illegal assignment of the scrip
in contravention of the act of Congress aforesaid. Such act merely prohibited
the assignment of the scrip as such, and in no manner attempted to restrict
the power of the scripee to alienate the land by contract, deed, or otherwise,
either prior or subsequent to the location of such scrip.

Notice — constructive — actual — record — equities.

    3. Plaintiff at all times had constructive, if not actual, notice of defendant's
and his grantor's rights, and, moreover, the record discloses that the general
equities in the case largely preponderate in defendant's favor, thus precluding
plaintiff's recovery, and clearly entitling defendant to the relief prayed for in
his answer.

Opinion filed February 10, 1914.

Appeal from District Court, Benson County, *John F. Cowan,* J.

Action to determine adverse claims to real property. From a judg-
ment in plaintiff's favor, defendant appeals.

Reversed with directions.

*Henry G. Middaugh* and *Rolla F. Hunt,* for appellant.

The ten-year statute should bar the plaintiff. Rev. Codes 1905,
§ 4924; Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86
N. W. 737; Stiles v. Granger, 17 N. D. 502, 117 N. W. 777; Calhoun
v. Millard (Calhoun v. Delhi & M. R. Co.) 121 N. Y. 69, 8 L.R.A.
248, 24 N. E. 27; Buffalo & N. Y. City R. Co. v. Dudley, 14 N. Y.
352; Brown v. Buena Vista County, 95 U. S. 157, 24 L. ed. 422;
Smith v. Clay, 2 Ambl. 645; Story, Eq. Jur. § 1520; Sample v. Barnes,
14 How. 70, 14 L. ed. 330; Walker v. Robbins, 14 How. 584, 14 L.

ed. 552; Creath v. Sims, 5 How. 192, 12 L. ed. 111; Bateman v. Willoe, 1 Sch. & Lef. 201; Murray v. Graham, 6 Paige, 622; Callaway v. Alexander, 8 Leigh, 114, 31 Am. Dec. 640; Powell v. Stewart, 17 Ala. 719; Riddle v. Baker, 13 Cal. 295.

The deed from Demerce to plaintiff is champertous and void. Rev. Codes 1905, § 8733; Rev. Codes 1899, § 7002; Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258; Brynjolfson v. Dagner, 15 N. D. 332, 125 Am. St. Rep. 595, 109 N. W. 320; Schneller v. Plankinton, 12 N. D. 561, 98 N. W. 77; Burke v. Scharf, 19 N. D. 228, 124 N. W. 79; Conrad v. Adler, 13 N. D. 199, 100 N. W. 722; Hanitch v. Beiseker, 21 N. D. 290, 130 N. W. 833.

A person who has earned the complete right to a patent for public lands, but to whom the patent has not yet issued, is usually regarded as the equitable owner, the United States or the state holding the legal title in trust for him. 26 Am. & Eng. Enc. Law, 2d ed. 403; Carroll v. Safford, 3 How. 441, 11 L. ed. 671; Deffeback v. Hawke, 115 U. S. 405, 29 L. ed. 427, 6 Sup. Ct. Rep. 95; Stark v. Starr, 6 Wall. 402, 18 L. ed. 925; Myers v. Croft, 13 Wall. 291, 20 L. ed. 562; Shepley v. Cowan, 91 U. S. 330, 23 L. ed. 424; Wirth v. Branson, 98 U. S. 119, 25 L. ed. 86; Simmons v. Wagner, 101 U. S. 260, 25 L. ed. 910; Barney v. Dolph, 97 U. S. 652, 24 L. ed. 1063; United States v. Freyberg, 32 Fed. 195; Witcher v. Conklin, 84 Cal. 499, 24 Pac. 302; Hayes v. Carroll, 74 Minn. 134, 76 N. W. 1017; Bowne v. Wolcott, 1 N. D. 415, 48 N. W. 336; Merrill v. Clark, 103 Cal. 367, 37 Pac. 238; McMillen v. Gerstle, 19 Colo. 98, 34 Pac. 681; Larison v. Wilbur, 1 N. D. 284, 47 N. W. 381; Snow v. Flannery, 10 Iowa, 318, 77 Am. Dec. 120; Turner v. Donnelly, 70 Cal. 597, 12 Pac. 469; McKean v. Crawford, 6 Kan. 112; Cooper v. Hunter, 8 Colo. App. 101, 44 Pac. 944; Richards v. Snyder, 11 Or. 509, 6 Pac. 186; Dillingham v. Fisher, 5 Wis. 475; Morgan v. Curtenius, 4 McLean, 366, Fed. Cas. No. 9,799; Camp v. Smith, 2 Minn. 155, Gil. 131; Goodlet v. Smithson, 5 Port. (Ala.) 245, 30 Am. Dec. 561; Carson v. Railsback, 3 Wash. Terr. 168, 13 Pac. 618; Sutphen v. Sutphen, 30 Kan. 510, 2 Pac. 100; Union P. R. Co. v. Durant, 95 U. S. 576, 24 L. ed. 391; Olive Land & Development Co. v. Olmstead, 103 Fed. 575, 20 Mor. Min. Rep. 700; Allen v. Merrill, 8 Land Dec. 207.

Heerman cannot complain that the improvements were placed on

the land by Wilbur for Demerce, instead of by Demerce personally. Fleischer v. Fleischer, 11 N. D. 221, 91 N. W. 51.

The deeds from Demerce through his attorney in fact, to Wilbur, were effectual and valid. A contract illegal in part, and legal as to the residue, is void as to all, when the *parts* cannot be separated. When they can be, the good will stand and the rest will fall. Bishop, Contr. 2d ed. § 487; Gilbert v. Thompson, 14 Minn. 544, Gil. 414; Thompson v. Myrick, 20 Minn. 205, Gil. 184, affirmed in 99 U. S. 291, 25 L. ed. 324; Dole v. Wilson, 20 Minn. 356, Gil. 308; Doe ex dem. Mann v. Wilson, 23 How. 457, 16 L. ed. 584; Crews v. Burchan, 1 Black, 352, 17 L. ed. 91; Coursolle v. Weyerhauser, 69 Minn. 328, 72 N. W. 697; Felix v. Patrick, 145 U. S. 317, 36 L. ed. 719, 12 Sup. Ct. Rep. 862; Midway Co. v. Eaton, 79 Minn. 442, 82 N. W. 861, affirmed in 183 U. S. 602, 46 L. ed. 347, 22 Sup. Ct. Rep. 261; Buffalo Land & Exploration Co. v. Strong, 91 Minn. 84, 97 N. W. 575.

If the transactions were intended as a conveyance of the land, and represented that intention, they could not be shown to be a transfer of the scrip. Midway Co. v. Eaton, 183 U. S. 607, 46 L. ed. 349, 22 Sup. Ct. Rep. 263.

*T. H. Burke* and *C. L. Lindstrom,* for respondent.

From the power of attorney to Ware, it is clear that all the interest of the Half-breed in the scrip was intended to pass from them to Ware. This was void. Act of July 17, 1854, 10 Stat. at L. 304, chap. 83; Allen v. Merrill, 8 Land Dec. 207; Re Poe, 29 Land Dec. 309; Gilbert v. Thompson, 14 Minn. 544, Gil. 414.

The location of Sioux Half-breed scrip by one acting in his own interest, and not for the benefit of the Half-breed, is in violation of the laws under which the scrip issued. Allen v. Merrill, supra; Cyr v. Fogarty, 13 Land Dec. 673.

The attempted sale in this case, before the final location of the scrip, cannot be sustained. Bowne v. Wolcott, 1 N. D. 415, 48 N. W. 336.

FISK, J. This is the statutory action to determine adverse claims to real property described as the east one-half of the southwest one-quarter of section 15, township 153, range 67. The complaint is in the usual form alleging title in plaintiff, and that the defendants claim some estate and interest therein adverse to the plaintiff's title, and prays

that defendants be required to set forth such adverse claims, and that they be adjudged to be null and void and the title quieted in plaintiff; and also that plaintiff have and recover the possession of such real property. Defendant Rolfe, who is the sole appellant, answered separately denying plaintiff's title, and alleging that he, Rolfe, is the owner in fee of the premises, and that for a period of over three years prior to the date of the answer (February, 1903), he had been in possession of a portion of such premises, to wit, fifty lots in the town of Minnewaukan, specifically describing them according to the plat of such town on file and of record; also all that portion of such premises lying in the south part of the town of Minnewaukan. The answer then alleges that he derived such title by virtue of the filing and location in the United States Land Office in the city of Devils Lake, on October 18, 1883, by one John V. Demerce, a Sioux Half-breed, or mixed blood of the Dacotah or Sioux Nation of Indians, of Dacotah or Sioux Half-breed certificate or scrip numbered 386, letter A, for 40 acres; and Dacotah or Sioux Half-breed certificate or scrip numbered 386, letter b, for 40 acres, upon the tracts described in the complaint, and subsequent deeds of conveyance from Demerce and wife to defendant Wilbur, executed and delivered on or about October 18, 1883, and after the location of such scrip as aforesaid, which deeds were, on October 19, 1883, duly filed for record in the proper register of deeds office; that such certificates or scrip were so filed and located on October 18, 1883, upon the premises in controversy, which were at the time unsurveyed government land. That thereafter the government of the United States, pursuant to such scrip filings, conveyed and granted such premises by letters patent to the said Demerce. Then follows allegations showing that such defendant is a remote grantee of the premises and the whole thereof from said Wilbur through various specified mesne conveyances. The answer then alleges on information and belief that plaintiff's alleged claim of title to the premises is based upon a deed claimed to have been executed by Demerce and wife to him on February 26, 1884, and recorded March 4, 1884, and while the said Wilbur was in possession of such premises, and with actual as well as constructive knowledge on plaintiff's part of the prior conveyance by Demerce and wife to Wilbur, and that at the time of such conveyance neither Demerce and wife nor the plaintiff were in possession of the premises or any portion thereof,

27 N. D.—4.

nor had they or either of them taken the rents or profits thereof for the space of one year prior to such conveyance, and therefore such alleged deed of conveyance was in violation of § 7002 of the Revised Codes, and was therefore void.

Further answering, defendant alleges that he has for more than three years last past been in the actual, open, notorious, and exclusive possession of said premises to the knowledge of plaintiff, and that plaintiff has never been in the possession thereof, nor prior to the commencement of this action had he ever claimed the same in any manner, nor attempted to assert or acquire possession or control thereof. Defendant also alleges that he and his grantors have paid all the taxes which have ever been paid upon the said premises, and that plaintiff has never paid or offered to pay any portion thereof, nor has he tendered or offered to reimburse defendant for such taxes thus paid by plaintiff. Defendant also alleges that he paid such taxes in good faith and under color of title to the premises in controversy.

The cause was tried in the court below in July, 1904, and judgment was ordered in plaintiff's favor as prayed for in the complaint on December 28, 1911, and judgment entered thereon in January, 1912, from which defendant appeals and demands a trial *de novo* in this court.

Quite a large amount of testimony was introduced at the trial, but there is no very material conflict therein. Both parties claim to have derived title from a common source, namely, through the said Demerce as heretofore stated, and the chief controversy between the parties involves questions of law.

Before considering the legal points raised, we deem it advisable to make a brief statement of the facts as disclosed by the evidence.

John V. Demerce was a Sioux Half-breed, and the government had issued to him the scrip aforesaid in exchange for lands of the Sioux Half-breed Reserve at Lake Peppin, Minnesota, under act of Congress of July 17, 1854, 10 Stat. at L. page 304, chap. 83, and he and his wife duly executed and delivered to one Thomas B. Ware two certain powers of attorney empowering him "to enter into and upon and take possession of any and all pieces and parcels of land, or the timber or other materials thereon, in the territory of Dakota, which we now own or which we may hereafter acquire or become seised of, or in

which we may now or hereafter be in any way interested" by virtue of such scrip, which was therein described, and further empowering him "to grant, bargain, demise, lease, convey, and confirm said land or any part thereof to such person or persons, and for such prices as to our said attorney shall seem meet and proper, and to thereupon execute and deliver in our name and on our behalf any deeds, leases, contracts, or other instruments, sealed or unsealed, and with or without covenants of warranty, as to him shall seem meet to carry out the foregoing powers." Such powers of attorney also contain provisions reciting that, in consideration of $40, such powers of attorney were made irrevocable, and that said Demerce and wife released all claims for proceeds of sale. Such powers of attorney were executed and duly acknowledged on July 10, 1883, and duly recorded on October 19, 1883, in the proper register of deeds office.

Acting under these powers of attorney, Thomas B. Ware entered upon certain unsurveyed land in Benson county, where the town of Minnewaukan was to be laid out, and made improvements pursuant to the statute under which the scrip was issued, and located such scrip on October 18, 1883, filing the same in the proper land office, together with his letters of attorney and applications to locate the scrip on the lands in controversy, such lands being then and there described by metes and bounds and by diagram. Such applications were accompanied by the affidavits of Ware showing that the tracts had been entered upon under such scrip, and stating the kind, character, and nature of the improvements that had been made on the land so located, whereupon the register and receiver of the land office indorsed on such applications their certificates, showing that the two items of scrip aforesaid had that day been located on the tract of land pursuant to the provisions of such act of Congress, and by the party duly authorized to make such location. They also certified to the receipt of such scrip from the said Ware. After the land in controversy had been surveyed, and on February 28, 1884, Ware filed in the land office confirmations whereby the lands so entered and scripted were adjusted to the government survey, and were shown to embrace the land described in the complaint. Subsequently, the government issued patents granting such land to John V. Demerce. After the location of such scrip as aforesaid, and on October 18, 1883, Demerce and wife, by the said Thomas B

Ware, their attorney in fact, under such powers of attorney, for a designated consideration of $200, granted and conveyed the premises to D. L. Wilbur by two separate warranty deeds containing the usual covenants, which deeds were duly recorded in the proper register of deeds office on October 19, 1883. The execution of such deeds is admitted. Thereafter Wilbur platted the principal part of said land as a portion of the town site of Minnewaukan, a small portion thereof lying at the south end being unplatted. The certificates to such plat bear date October 24, 1883, and such certificates and plats were filed for record on October 30, 1883.

Defendant Rolfe concededly holds such title as he may have through Wilbur.

The evidence discloses that thereafter, and on February 26, 1884, John V. Demerce and wife, for a named consideration of $50, executed a deed of the whole of the premises in controversy to the plaintiff, and it is through this deed of conveyance that the plaintiff asserts title in this action. The proof discloses that plaintiff never paid any taxes on the land.

He was asked this question:

Q. Did you ever pay any taxes on this property?

A. No, sir, never had an opportunity; I claimed I owned it as an eighty, and they had no right to assess it as lots.

Q. You didn't offer to pay the taxes on the lots?

A. No, sir.

It was admitted at the trial that defendant Rolfe had paid all the taxes upon the unplatted part of the land in controversy from 1887 to 1902 inclusive, and it was stipulated by plaintiff's counsel "that defendant Rolfe has had this land, the unplatted portion of the south forty of this tract in question, under fence for four years, and as soon as that fact was ascertained by the plaintiff that he instituted the proceedings now pending." It was also admitted that defendant Rolfe had a well upon these premises and it was used daily in the watering of stock and had been for four years.

There is some testimony in the record tending to show that plaintiff, through his agent Campbell, placed a small shack on the premises in

the spring of 1884, and Campbell and his wife resided therein until the fall of 1886 or 1887, and the witness Campbell testifies that during that time he knew of no other buildings or improvements on the premises. This, at the most, is the extent of plaintiff's possession. However, it is a conceded fact in the case that Rolfe paid all the taxes upon the unplatted part of the land in controversy from 1887 to 1902 inclusive, and at the commencement of the action and for several years prior thereto he was in possession and had made valuable improvements, including the digging a well and the construction of fences.

Considerable testimony was introduced relative to the extent of the improvements placed upon the premises prior to the filing of the scrip, but the fact that the land office department accepted the proof offered before them as a sufficient compliance with the statute, and thereafter issued the patents to Demerce, renders such testimony not material. In other words, the government alone can question the sufficiency of such preliminary proof by the entryman. Furthermore, both parties to this litigation base their claim to title under the patents aforesaid, the defendant through a deed executed by Ware as attorney in fact for Demerce pursuant to the powers of attorney aforesaid, and the plaintiff through a deed subsequently executed by Demerce personally. It is for the court, therefore, to decide, under all the facts and the law applicable thereto, which deed should prevail, keeping in view the provision of the Federal statute under which such scrip was issued, prohibiting the assignment thereof,—it being respondent's contention that the so-called powers of attorney were null and void in so far as they authorized such attorney in fact to sell the land.

In the light of the foregoing statement of facts, we will now consider the propositions of law advanced.

It is first contended by appellant's counsel, and we think with much merit, that, in view of the fact that seven years and five months elapsed between the trial of the case and the decision thereof by the trial court, and especially in view of the fact that such court made no finding of fact except the ultimate fact of plaintiff's ownership of the premises, the general rule that where the testimony is conflicting this court should give weight to the findings of the trial court, because of his superior opportunities for weighing the testimony and determining the credibility of the witnesses, should not obtain on this appeal. What

the rule should be under such a state of facts we do not determine, for there is no sharp conflict in the testimony as to the controlling facts.

Appellant's second point is that plaintiff was guilty of gross laches in asserting his alleged rights, and that therefore he ought not to recover. And his next point is that the deed from Demerce to plaintiff was champertous and void under § 8733, Rev. Codes 1905, and numerous decisions of this court cited in the brief. The conclusion which we have reached upon other points makes it unnecessary for us to consider either of the above contentions.

Appellant's contention under points 4, 5, and 6 are, we think, correct, and this conclusion necessitates a reversal of the judgment. These contentions in the order presented are,

First. That upon the location and surrender of the scrip on October 18, 1883, Demerce acquired an equitable title to the land in controversy, and that the patents, when issued by the government, related back to that date.

Second. The powers of attorney from Demerce to Ware, appellant's remote grantor, were valid, effectual, and sufficient to authorize the attorney in fact, Ware, to locate and surrender the scrip, and make the filing thereunder in the United States Land Office, and to convey the land acquired thereby; even though the separate and additional power therein purported to make it irrevocable, and released the attorney from any claim to the funds realized on a sale, may have been ineffectual and inoperative; and,

Third. The deeds from Demerce through Ware, his attorney in fact, to Wilbur, were effectual and valid.

Regarding the first proposition, it is respondent's contention that while the powers of attorney were valid and effectual to authorize Ware to locate the scrip for Demerce, that the portion of such powers of attorney authorizing him to sell the land to be thereafter acquired through such scrip, and providing that the same should be irrevocable, amounted to an assignment of the scrip contrary to the act of Congress under which the same was issued as aforesaid. He also contends, as we understand it, that the location of this scrip having been made by metes and bounds, and not accompanied by a diagram denoting natural objects and distances so as to fix with certainty the exact location wanted, that Demerce acquired no interest in the land until February

28, 1884, when a new application to locate the same scrip upon the same land was made, describing such land by the proper government subdivisions according to the survey which had been made after the first location. His chief contention, however, is in brief that the powers of attorney authorizing Ware to take such steps as were necessary to vest title in Demerce were valid, but the portions purporting to authorize him to convey the land were null and void, for reasons above stated. Such contention, as we shall hereafter see, lacks support in the authorities, and is untenable. It seems to be well settled that after a location of such scrip is made in conformity with the act of Congress, the holder acquires a vested right, and he possesses in equity the equitable title to the land, the government holding the legal title in trust for him. It is also well settled that, notwithstanding such scrip is not assignable (Felix v. Patrick, 145 U. S. 317, 36 L. ed. 719, 12 Sup. Ct. Rep. 862), the land scripted is alienable as soon as located, and the holder of the scrip may give a valid power of attorney, not only for the location of the land, for the erection of improvements thereon, but for its conveyance after location. See 22 Cyc. 139 and cases cited, and especially Buffalo Land & Exploration Co. v. Strong, 91 Minn. 84, 97 N. W. 575; Midway Co. v. Eaton, 183 U. S. 602, 46 L. ed. 347, 22 Sup. Ct. Rep. 261, affirming 79 Minn. 442, 82 N. W. 861; Dole v. Wilson, 20 Minn. 356, Gil. 308; Thompson v. Myrick, 20 Minn. 205, Gil. 184; Gilbert v. Thompson, 14 Minn. 544, Gil. 414.

The Minnesota supreme court in Buffalo Land & Exploration Co. v. Strong had before it for consideration scrip issued under this same act of Congress, and a power of attorney in all respects like that in the case at bar, and we think the opinion in that case conclusively answers respondent's contention that the powers of attorney, being irrevocable, operated as an assignment of the scrip. This point being respondent's main contention, we feel justified in quoting liberally from the opinion of the Minnesota court. Among other things, that court said:

"There was no substantial difference between the power to locate the scrip considered in Midway Co. v. Eaton, supra, and the one now before us. The attorney in fact, or his substitute, was irrevocably vested in terms with all such power and authority as Pettijohn himself could exercise if personally present; and the acts of such attorney, or his duly authorized substitute, were fully ratified and confirmed.

Nothing more need be said about this power. The only difference between the power to sell under consideration in this case last mentioned, and the one now before us, arises out of the clause in the latter whereby, and in consideration of the sum of $160 paid by the attorney in fact named in the power, there was irrevocably vested in such attorney the power to grant, bargain, sell, demise, convey, and confirm any tract of land which Pettijohn might acquire by virtue of the scrip location; and the latter, for this same consideration, also released to his attorney all claim to any of the proceeds of a sale, lease, or contract relative to any part of said land. It is well settled, with certain exceptions, that a principal named in a power of attorney may revoke such an instrument at his mere pleasure, although the agency may be expressly declared to be irrevocable in terms. This rule of law applies to the power to locate, which expressly provided that it was irrevocable. But when the authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, the power is irrevocable whether so expressed or not.

"The power to sell was therefore irrevocable, because it was executed for a valuable consideration. But we do not regard this fact as distinguishing this case from one where the power to sell may be revoked at will, whether there is or is not a provision declaring it irrevocable. But the fact that the power to sell was irrevocable did not operate to, nor did it, transfer the scrip, or have any more effect upon the transaction than if the power had been simple, and in terms exactly that considered in the Midway Case. The inhibition found in the statute applies solely to a transfer or sale of the scrip, and in this case the scrip was to be located by the attorney in fact in the name of Pettijohn, and the patent would issue to Pettijohn, and to no one else. When the location was made under the power, the land became Pettijohn's, and could have been conveyed by him at any time before an exercise of the authority found in the power to sell.

"The case is governed in part by Gilbert v. Thompson, 14 Minn. 544, Gil. 414, and is not distinguishable from Thompson v. Myrick, 20 Minn. 205, Gil. 184. In the first of these cases it was held that the right to acquire lands by means of this scrip was a personal right in the one to whom the scrip was issued, and was not property, in the sense of the right being assignable; that no restraint was imposed by

the statute upon the right of property in land acquired by a location of the scrip after such location. In the scrip itself, said the court, the Half-breed had nothing which he could transfer to another, but his title to the land, when perfected under it, was as complete as though acquired in any other way. The title vested absolutely. In the Thompson Case it appears that, with a view to the location of the scrip for the benefit of the beneficiaries, one Myrick placed the same, with powers of attorney, in the hands of Thompson, and at the same time entered into a written agreement with Thompson, in which he agreed that, upon the location of the scrip, he would secure the title to the land located to be lawfully vested in Thompson. The consideration was $2,800, evidenced by a note payable in one year from its date, and to be secured upon the land as Thompson should acquire title. Thompson located the scrip, and demanded a conveyance of the title. Myrick refused, and conveyed the land to his wife, who was also a defendant in the suit. Specific performance was decreed by the trial court, and its decree was affirmed by the supreme court of the state and of the United States.

"If such a contract did not operate as a transfer of the scrip, we fail to see how the power of attorney now before us could have that effect. If anything, the intent to secure title to the land was much more manifest through the Myrick-Thompson contract than it was by an irrevocable power of attorney executed for a valuable consideration. It could make no possible difference whether $160 was actually paid before the location in consideration of the execution of a power, or $2,800 was to be paid afterwards, for the title.

"The fact that the two powers may have been given at the same time, and with an intent that through one the real estate located by virtue of the other should be conveyed to a third party, does not amount to an assignment of the scrip itself,—the only act forbidden. The powers are entirely separate and independent. The exercise of one does not depend upon the exercise of the other. Hoover is made the agent to locate; Hale, to sell. The power to locate was revocable; the power to sell was irrevocable. If the transactions were intended as a conveyance of the land, and represented that intention, they could not be shown to be a transfer of the scrip. Midway Co. v. Eaton, supra."

The Supreme Court of the United States in the case of Midway Co. v. Eaton, 183 U. S. 602, 46 L. ed. 347, 22 Sup. Ct. Rep. 261, affirming

79 Minn. 442, 82 N. W. 861, set at rest the principal questions involved in the case at bar favorable to appellant's contention. That was an action to quiet title. Two pieces of Sioux Half-breed scrip were issued to one Orillie Moreau. She executed powers of attorney to locate such scrip and to sell the land. Pursuant thereto, such scrip was located on unsurveyed land, describing it by metes and bounds. Subsequently, there was an adjustment to the government survey. The rights and interests of Orillie Moreau Stream, by sundry mesne conveyances, were conveyed to the defendants, Eaton et al. After the locations of the scrip and the transfer, an attack was made in the United States Land Department against the scrip locations, and the Secretary of the Interior held such locations invalid, and that neither Orillie Moreau Stram, nor those claiming under her, were entitled to the land, for the following reasons: "(1) That the improvements made upon the land when it was unsurveyed were not made under the personal supervision of Orillie Stram, and that she had not had personal contact with the land; (2) that the power of attorney to Eaton to locate the scrip, and the power of attorney executed at the same time to Leonidas Merritt to sell the lands which should be located, operated as an assignment of the scrip, and were in violation of the act of July 17, 1854, and the entry of the lands therefore was not for the benefit of said Orillie Stram; (3) that the subsequent location and adjustment of the scrip to the lands after the latter were surveyed were ineffectual in view of the previous attempt to locate the scrip, and in view of his (the Secretary's) decision relative to the question of improvements; (4) that Orillie Stram had no power to alienate the lands before location of the scrip, or to contract for the sale of them, or to grant a power of attorney to sell the same for her after they should be located, but held that she had the right to sell immediately after location of the scrip. As a deduction from these conclusions, the Secretary held that the lands were still public lands, and open to entry."

After the land was attempted to be thus thrown open for settlement, a filing was made by one Frank Hicks, to whom patent was subsequently issued, and Hicks and his wife conveyed to the plaintiff. The defendants, Eaton et al., claim under the Half-breed scrip locations and sundry mesne conveyances. The Supreme Court in its opinion reviewed and quoted at length from Gilbert v. Thompson, 14 Minn. 544,

Gil. 414, and Thompson v. Myrick, 20 Minn. 205, Gil. 184, 99 U. S. 291, 25 L. ed. 324, and from the decisions of the Secretary of the Interior, and sustained the scrip locations and the transfers to the defendant.

We quote from the opinion as follows: "If evidence was excluded in Gilbert v. Thompson, it was admitted and considered in Thompson v. Myrick; and in both cases the delivery of scrip and its location under letters of attorney were decided to be valid, forming in one case a good title, and in the other constituting a ground for a compulsory conveyance from the Half-breed. The moral and legal effect of the transfer of scrip was declared by the court in Gilbert v. Thompson. The first involved, the court said, no 'turpitude nor the breach of any legal duty, as in the case of an attempt to transfer a pre-emption right;' of the second, it was said, it would be of no effect as a transfer; that 'the title to the scrip would remain in him (the Half-breed), and the title to the land covered by it would vest in him (the Half-breed), just as though no such attempt had been made.' The power of attorney, however, was given full legal effect as authority to sell the land located. It is true the court excluded parol evidence of an intention to transfer the scrip. But why? Manifestly, because the transactions did not constitute a transfer of the scrip as such, and their legal character could not be destroyed by parol proof that they were intended to be something else. In other words, the court decided that the transactions were intended as a conveyance of the land, and represented that intention, and could not be shown to be a transfer of the scrip. And in Thompson v. Myrick the court observed: 'We can conceive of no reason why Myrick was not at liberty, either before or after location was made, to enter into an agreement to secure the title (inuring from the location) to the plaintiff upon the payment of an agreed consideration.' The reasoning and the conclusions of the supreme court of Minnesota were approved by this court, as we have seen."

In the light of these controlling authorities, our duty seems plain, and we deem an extended discussion of the questions involved quite unnecessary.

Respondent's counsel were evidently led astray by certain decisions and rulings of the Department of the Interior, especially with reference to the construction of that portion of the act under which this scrip was

issued and located, wherein it provides: "That no transfer or conveyance of any of said certificates or scrip shall be valid." While certain decisions of the Land Department have broadly held that such act was violated under facts similar to those in the case at bar, the courts in the cases above cited have uniformly held to the contrary, construing such provision as merely intended to prohibit an assignment of the scrip, and in no manner intended to restrict the scripee in alienating the land when acquired, or in the least interfering with any contract he may enter into for a future sale or conveyance thereof.

We think respondent's counsel are also clearly in error in the contention that Demerce acquired no title which he could convey until February 28, 1884, the date when he made the application to adjust the scrip locations to the government subdivisions. The validity of the locations made on October 18, 1883, was not questioned by the government in any respect. On the contrary, the Land Department on that date accepted the scrip as properly located, and issued receipts therefor. The date of such original locations must therefore be deemed the date when Demerce's equitable title vested. See Allen v. Merrill, 8 Land Dec. 207; Harmon v. Clayton, 51 Iowa, 36, 50 N. W. 541.

Respondent at all times had at least constructive notice of appellant's rights. Not only this, but the general equities of the case largely preponderate in appellant's favor, and as we have seen, the contentions of respondent lack support in the authorities.

It follows that the judgment should be and the same is accordingly reversed, and the District Court directed to enter a judgment in defendant's favor, quieting title as against the plaintiff to the lands in controversy, as prayed for in the answer, appellant to recover his costs and disbursements in both courts.